No. 23-40281

---

In the United States Court of Appeals
for the Fifth Circuit

---

**Jane Roe,**
*Plaintiff - Appellant*

v.

**Leighton Paige Patterson;
Southwestern Baptist Theological Seminary,**
*Defendants - Appellees*

---

On appeal from the United States District Court for the
Eastern District of Texas, Plano Division

---

**BRIEF OF DEFENDANT-APPELLEE
SOUTHWESTERN BAPTIST THEOLOGICAL SEMINARY**

---

*Attorneys for Defendant-Appellee
Southwestern Baptist Theological Seminary*

| | |
|---|---|
| MACDONALD DEVIN MADDEN KENEFICK HARRIS, PC | **Bryan Rutherford** |
| 12770 Coit Road, Suite 1100 | Texas Bar No. 24025628 |
| Dallas, Texas 75251 | BRutherford@MacdonaldDevin.com |
| 214.744.3300 telephone | **David M. Macdonald** |
| 214.747.0942 facsimile | Texas Bar No. 12755300 |
| | DMacdonald@MacdonaldDevin.com |
| | |
| KELLY HART & HALLMAN | **Michael D. Anderson** |
| 201 Main Street, Suite 2500 | Texas Bar No. 24031699 |
| Fort Worth, Texas 76102 | Michael.Anderson@KellyHart.com |
| 817.332.2500 telephone | |
| 817.878.9280 facsimile | |

2503874.2   2308.20

No. 23-40281

---

In the United States Court of Appeals
for the Fifth Circuit

---

**Jane Roe,**
*Plaintiff - Appellant*

v.

**Leighton Paige Patterson;
Southwestern Baptist Theological Seminary,**
*Defendants - Appellees*

---

On appeal from the United States District Court for the
Eastern District of Texas, Plano Division

---

CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the

outcome of this case. These representations are made in order that the judges of this

Court may evaluate possible disqualification or recusal.

| **Plaintiff-Appellant** | **Trial and appellate counsel for Plaintiff-Appellant** |
|---|---|
| Jane Roe | Sheila P. Haddock |
| | The Zalkin Law Firm, P.C. |
| | 10590 W. Ocean Air Drive, Suite 125 |
| | San Diego, California 92130 |
| | Telephone: (858) 259-3011 |
| | Facsimile: (858) 259-3015 |

2503874.2   2308.20

|  | **Additional trial counsel for Plaintiff-Appellant** |
|---|---|
|  | Susan E. Hutchison |
|  | Hutchison & Foreman, PLLC |
|  | 505 Pecan Street, Suite 102 |
|  | Fort Worth, Texas 76102 |
| **Defendant-Appellee** | **Trial and appellate counsel for Defendant-Appellee** |
| Leighton Paige Patterson | James Warren Grau |
|  | Travis J. Jones |
|  | Grau Law Group |
|  | 500 N. Akard Street, Suite 125 |
|  | Dallas, Texas 75201 |
| **Defendant-Appellee** | **Trial and appellate counsel for Defendant-Appellee** |
| Southwestern Baptist | David M. Macdonald |
| Theological Seminary | Bryan Rutherford |
| (SWBTS) | Macdonald Devin Madden Kenefick Harris, P.C. |
|  | 12770 Coit Road, Suite 1100 |
|  | Dallas, Texas 75251 |

Michael D. Anderson
Kelly Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, Texas 76102

**Additional trial counsel for Defendant-Appellee**
Jennifer D. LeBlanc
Macdonald Devin Madden Kenefick Harris, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251

Dated: October 27, 2023

   /s/ Bryan Rutherford
**Bryan Rutherford**
*Attorney of Record for Defendant-Appellee*
*Southwestern Baptist Theological Seminary*

2503874.2   2308.20

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Southwestern Baptist Theological Seminary respectfully submits that neither the record nor the law applicable to this appeal is unduly complicated. Further, the record demonstrates an absence of any error meriting reversal. For these reasons, this Court should deny oral argument. In the event this Court determines that oral argument would assist it in resolving this case, Defendant-Appellee SWBTS reserves the right to appear and present argument.

2503874.2   2308.20

## TABLE OF CONTENTS

Certificate of Interested Persons ........................................................ 2

Statement Regarding Oral Argument ................................................. 4

Table of Contents ............................................................................. 5

Table of Authorities ......................................................................... 9

Statement of Jurisdiction.................................................................. 13

Adoption........................................................................................... 13

Statement of Issues........................................................................... 14

Statement of the Case ....................................................................... 15

      I.     Procedural history................................................................. 15

      II.    Relevant individuals ............................................................. 15

      III.   Factual background ............................................................... 17

             A.     Roe and Doe's admissions, and SWBTS's policies ................... 19

             B.     Roe's allegations regarding assaults by Doe ............................... 22

             C.     On August 20, 2015, Roe first reported to Patterson Doe's alleged assaults and weapons violations............................ 23

             D.     Aftermath of Roe's initial assault and weapons report ............. 26

             E.     Alleged defamatory statements ................................................. 26

2503874.2    2308.20

**Summary of the Argument** ..................................................... 27

**Argument** ............................................................................... 29

**Statement of the Standard of Review** ................................... 29

I.    The district court applied the correct standard of review ................. 30

II.   **Response to Roe's First and Second Issues**: The district court correctly held SWBTS and Patterson owed Roe no legal duty under the Texas multifactor test, and properly applied the summary judgment standards to grant SWBTS and Patterson summary judgment as to Roe's negligence and gross negligence claims ..................................................... 33

     A.   Roe has waived certain negligence claims by failure to adequately brief same before this Court .................................. 33

     B.   The district court correctly held SWBTS did not owe Roe a duty under the Texas multifactor duty test ................... 34

     C.   The district court correctly held Patterson did not owe Roe a duty under the Texas multifactor duty test (briefed by Patterson and adopted by SWBTS) ....................... 35

     D.   Roe failed to raise a genuine issue of material fact regarding proximate cause ........................................ 36

         1.   Roe has waived any argument regarding cause in fact and, regardless, there is no genuine material fact that any act or omission by SWBTS was a cause in fact of Roe's alleged injuries ............................ 36

         2.   There is no genuine material fact that Doe's alleged assaults on Roe were foreseeable ........................ 38

            a.   SWBTS's admission policies and procedures ..... 38

2503874.2    2308.20

**b.**    Doe's application and admission ......................... 39

**c.**    Actions after admission ......................................... 41

**d.**    Sexual harassment policies and procedures ........ 42

**E.**    Roe failed to raise genuine issues of material fact regarding the essential elements of her gross negligence claim .......................................................... 43

**F**    Roe's arguments regarding witness credibility are without merit ............................................................... 44

**III.**    **Response to Roe's Third Issue:** The district court properly held Roe failed to meet her burden to raise genuine issues of material fact as to the essential elements of her defamation claim against SWBTS and Patterson .................................... 46

**A.**    The district court correctly held Roe failed to raise genuine material fact issues regarding the essential elements of her defamation claims made directly against Patterson ................. 48

**B.**    The district court correctly held Roe failed to raise genuine material fact issues regarding the essential elements of her defamation claims against SWBTS ........................................... 49

**1.**    "The Untold Truth" ........................................ 49

**2.**    The Sharpe "Release of Facts" ........................ 53

**3.**    The Loveless Letter ........................................ 54

**4.**    Patterson's May 2016 statements to Patricia Ennis ....... 56

**5.**    The May 22, 2018 meeting ............................. 58

**C.**    The district court correctly held Roe failed to raise genuine material fact issues regarding the essential

2503874.2    2308.20

element of damages resulting from her defamation
claims against SWBTS ............................................................... 60

**Conclusion** ...................................................................................... 62

**Certificate of Service** ..................................................................... 63

**Certificate of Compliance with Rule 32(a)** ............................... 63

2503874.2   2308.20

TABLE OF AUTHORITIES

**Cases**

*Abbott v. Pollock,*
    946 S.W.2d 513 (Tex. App.–Austin 1997, pet. denied) .......................... 56, 59

*Allen v. Wal-Mart Stores Tex., LLC,*
    No. 6:19-CV-00478, 2020 WL 4805444 (E.D. Tex. Aug. 18, 2020) ............ 42

*Ameen v. Merck & Co.,*
    226 F.App'x 363 (5th Cir. 2007) ............................................................. 56, 59

*Anderson v. Durant,*
    550 S.W.3d 605 (Tex. 2018) ..................................................................... 29, 61

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................... 29, 30

*Barton v. Whataburger, Inc.,*
    276 S.W.3d 456 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ........... 40

*Bos v. Smith,*
    556 S.W.3d 293 (Tex. 2018) ........................................................................ 32

*Celotex Corp v. Catrett,*
    477 U.S. 317 (1986) ..................................................................................... 30

*Conkling v. Turner,*
    18 F.3d 1285 (5th Cir. 1994) ....................................................................... 29

*Cox Tex. Newspapers, L.P. v. Penick,*
    219 S.W.3d 425 (Tex. App.—Austin 2007, pet. denied) .............................. 46

*Crouch v. J C Penney Corp., Inc.,*
    337 Fed. Appx. 399 (5th Cir. 2009) .................................................. 57, 58, 59

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
    907 S.W.2d 472 (Tex. 1995) ...................................................... 36, 37, 40, 41

*Frith v. Fairview Baptist Church,*
    No. 05-01-01605-CV, 2002 WL 1565664
    (Tex. App.–Dallas July 17, 2002, pet. denied) (mem. op.) ........................... 40

*Greater Houston Transp. Co. v. Phillips,*
    801 S.W.2d 523 (Tex. 1990) ...................................................... 35, 36

*Hall v. Stephenson,*
    919 S.W.2d 454 (Tex. App.—Fort Worth 1996, writ denied) ....................... 32

*Hamilton v. Segue Software Inc.,*
    232 F.3d 473 (5th Cir. 2000) ........................................................ 29

*Houser v. Smith,*
    968 S.W.2d 542 (Tex. App.–Austin 1998, no pet.) ....................................... 40

*Int'l Ass'n of Machinists & Aerospace Workers v.*
    *Compania Mexicana de Aviacion, S.A. de C.V.,*
    199 F.3d 796 (5th Cir. 2000) ........................................................ 30

*In re Lipsky,*
    460 S.W.3d 579 (Tex. 2015) ......................................................... 46

*KTRK TV, Inc. v. Robinson,*
    409 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ........... 61

*Lee Lewis Const., Inc. v. Harrison,*
    70 S.W.3d 778 (Tex. 2001) ........................................................... 34

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..................... 30, 32, 42

*Memon v. Shaikh,*
    401 S.W.3d 407 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ............... 61

*Minyard Food Stores, Inc. v. Goodman,*
    80 S.W.3d 573 (Tex. 2002) ................................................. 48, 56, 57, 58, 59

2503874.2   2308.20

*Moyer v. Jos. A. Bank Clothiers, Inc.*,
   No. 3:11-CV-3076-L, 2013 WL 4434901 (N.D. Tex. Aug. 19, 2013) ..... 57, 59

*New York Times v. Sullivan*,
   376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ...................................... 46

*Pagayon v. Exxon Mobil Corp.*,
   536 S.W.3d 499 (Tex. 2017) ............................................................. 34

*Parkway Co. v. Woodruff*,
   901 S.W.2d 434 (Tex. 1995) ............................................................. 60

*Roe v. Patterson*,
   No. 4:19-CV-179-SDJ, 2023 WL 2632803 (E.D. Tex. Mar. 25, 2023) ... *passim*

*Roe v. Patterson*,
   No. 4:19-CV-179-SDJ, 2023 WL 2787956 (E.D. Tex. Apr. 4, 2023) ...... *passim*

*Shepherd v. City of Shreveport*,
   920 F.3d 278 (5th Cir. 2019) ............................................................ 29

*Sindhi v. Raina*,
   905 F.3d 327 (5th Cir. 2018) ............................................................ 33, 35, 37

*Travis v. City of Mesquite*,
   830 S.W.2d 94 (Tex. 1992) ............................................................... 36

*Triplex Communications, Inc. v. Riley*,
   900 S.W.2d 716 (Tex. 1995) ............................................................. 34

*Wheeler v. New Times, Inc.*,
   49 S.W.3d 471 (Tex. App.–Dallas 2001, no pet.) ......................................... 51

2503874.2   2308.20

## Statutes

TEX. CIV. PRAC. & REM. CODE § 41.005(c) .............................................................. 43

TEX. CIV. PRAC. & REM. CODE § 41.011(11) ........................................................... 43

## Rules

5th CIR. LOC. R. 28.2.1 ................................................................................................. 2

FED. R. APP. P. 28(a)(9)(A) ..................................................................................... 33, 37

FED. R. APP. P. 28(b)(1) ............................................................................................... 13

FED. R. APP. P. 28(b)(3) ............................................................................................... 15

FED. R. APP. P. 28(i) .............................................................................................. 13, 36

FED. R. APP. P. 32(a)(5) ............................................................................................... 63

FED. R. APP. P. 32(a)(6) ............................................................................................... 63

FED. R. APP. P. 32(a)(7)(B)(i) ...................................................................................... 63

FED. R. APP. P. 32(f) ................................................................................................... 63

FED. R. CIV. P. 56(a) .................................................................................................... 29

2503874.2  2308.20

## STATEMENT OF JURISDICTION

Defendant-Appellee Southwestern Baptist Theological Seminary does not contest this Court's jurisdiction over this appeal.  FED. R. APP. P. 28(b)(1).

## ADOPTION

To avoid unnecessary repetition, SWBTS hereby adopts by reference the Brief filed by Defendant-Appellee Leighton Paige Patterson to the extent applicable to SWBTS, as Roe has made claims that SWBTS negligently supervised or retained Patterson, and is vicariously liable for certain of his acts or omissions.  FED. R. APP. P. 28(i).

2503874.2    2308.20

## STATEMENT OF ISSUES

1.     The district court correctly held SWBTS owed Roe no legal negligence duty under the Texas multifactor test, and properly applied the summary judgment standards to grant SWBTS summary judgment as to Roe's negligence and gross negligence claims.

2.     The district court correctly held Patterson owed Roe no legal negligence duty under the Texas multifactor test, and properly applied the summary judgment standards to grant Patterson summary judgment as to Roe's negligence and gross negligence claims (separately briefed by Patterson and adopted by SWBTS).

3.     The district court properly held Roe failed to meet her burden to raise genuine issues of material fact as to the essential elements of her defamation claims against SWBTS and Patterson.

2503874.2   2308.20

<u>STATEMENT OF THE CASE</u>

## I.    <u>Procedural history</u>

Roe alleged that, while a SWBTS undergraduate student, she was stalked, physically abused, sexually abused, and threatened with violence towards herself and her family by John Doe, a SWBTS seminary student and student-employee. ROA.1481-1486. SWBTS does not dispute Roe's general recitation of the procedural history of this case, with two additions. FED. R. APP. P. 28(b)(3). First, SWBTS's and Patterson's summary judgment motions included Roe's gross negligence claims, not just her negligence claims. ROA.6437; ROA.6008. Second, Roe omits the fact that the district court heard several hours of arguments and evidence leading up to its eventual grant of the four summary judgment motions at issue, which disposed of the entire case.    ROA.2606, ROA.2679-2685.    This is relevant because it demonstrates Roe had the opportunity to fully develop evidence regarding her claims prior to the trial court's grant of summary judgment, which occurred on the eve of trial. ROA.2547, ROA.2779, ROA.2709, ROA.2606, ROA.3006.

## II.    <u>Relevant individuals</u>

To aid the Court regarding identification of the individuals relevant to Roe's claims, SWBTS provides the following list of people and their relationships to Roe and SWBTS:

2503874.2    2308.20

| | |
|---|---|
| John Doe | SWBTS seminary student and student-employee during 2013-2015. ROA.7019 He passed away before Roe filed the underlying lawsuit against SWBTS. ROA.2772. |
| Dr. Leighton Paige Patterson | Defendant-Appellee. He was SWBTS's president during the time period of Roe's allegations regarding Doe. ROA.9830. SWBTS terminated his employment on May 30, 2018. ROA.9831. |
| Joe Bloggs | Pseudonym for a SWBTS student who testified he had a consensual sexual relationship with Roe between April and October 2015. ROA.6709-6712. |
| Scott Colter | Patterson's Chief of Staff during Patterson's employment with SWBTS. ROA.8960-8961. Following Patterson's termination by SWBTS, Colter continued to work for Patterson and/or Patterson's foundations and businesses. ROA.8955, ROA.9209-9212. |
| John Nichols | SWBTS's Director of Security (later Police Chief) during 2013-2015. ROA.10018-10020. |
| Dean Nichols | SWBTS's Chaplain during the time period relevant to Roe's allegations. ROA.10099. |
| Kyle Walker | SWBTS's Admissions Director in 2013, at the time Doe was admitted as a student. ROA.8439. |
| Dr. Richard Knight | SWBTS's campus physician, and SWBTS professor with whom Roe had a class in 2014-2015. ROA.6563-6565. |
| Lennie Knight | Wife of Dr. Richard Knight, and long-time family friend of Roe and her mother. ROA.9704-9706. It is undisputed she was not |

| | |
|---|---|
| | a SWBTS employee during any relevant time period. ROA.6655. |
| Sharayah Colter | Wife of Scott Colter. (Dkt. #288 at 14–15). It is undisputed she was not a SWBTS employee. |
| Gary Loveless | SWBTS donor who submitted a letter to the SWBTS Executive committee on June 29, 2018. ROA.6994-7000, ROA.10901-10907. |
| Kevin Ueckert | Chairman of SWBTS's Board of Trustees during 2018. ROA.10368. |
| Shelby Sharpe | Personal lawyer of Patterson during May and June 2018, and during the relevant time period of Roe's defamation allegations. ROA.6752 |
| Dr. Patricia Ennis | SWBTS professor who saw Roe regularly during the relevant time period. ROA.11137; ROA.10380-10381, ROA.6573. |
| Candi Finch | SWBTS adjunct professor and administrative assistant to Dorothy Patterson, Patterson's wife. ROA.6954-6955 |

## III.   Factual background

SWBTS disputes Roe's statements regarding an alleged toxic "culture" at SWBTS. *See Brief for Plaintiff-Appellant*, pp. 4-6. Such allegations regarding a school's environment or culture could be relevant to a Title IX claim, but are not germane to Roe's claims against SWBTS for defamation or negligence. Additionally, in her brief, Roe details her allegations regarding the timing of events between her arrival on campus and the interactions with her alleged assault, John Doe. The district court

detailed the evidence in the light most favorable to Roe, but also identified undisputed facts supported by the evidence. Roe has omitted some of those undisputed facts which informed the district court's decisions.

For example, it is undisputed Roe had personal knowledge that Doe possessed firearms on campus, and that she failed to report such possession (or concerns about such possession) to SWBTS for many months, until well after the alleged assaults occurred. ROA.9732-9734. When Roe did report firearm possession on campus by Doe to Patterson and others on August 20, 2015, the undisputed evidence established that SWBTS officers performed a search of Doe's room the same day and found several firearms, all of which were confiscated. ROA.8905-8914. Further, Doe omits the undisputed evidence that, prior to the first alleged assault, she voluntarily interacted with Doe. As detailed by the district court, Roe spoke with Doe "for extended periods of time by phone," accepted flowers from him, and attended the October 2014 party at which Roe alleged Doe first assaulted her. *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2632803, at *14 (E.D. Tex. Mar. 25, 2023); ROA.6081-6082, ROA.6144-6177, ROA.6540, ROA.9731. SWBTS presents the following factual background, to aid the Court with issues in this appeal.

A.    *Roe and Doe's admissions, and SWBTS's policies*

SWBTS is a private non-profit higher education institution located in Fort Worth, and is one of the world's largest seminaries.  *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2632803, at *1 (E.D. Tex. Mar. 25, 2023).  Defendant-Appellee Dr. Leighton Paige Patterson served as SWBTS's president during the time period of Roe's allegations regarding Doe.  ROA.9830-9831.

SWBTS admitted Doe as a student in the fall of 2013.  ROA.6457.  SWBTS later hired him as a student-employee, performing maintenance work.  ROA.6469-6474.  A background report, completed by IntelliCorp, revealed that Doe had a criminal history including: (1) a DUI in 2011 in Cleveland County, Oklahoma; (2) Public Intoxication in 2007 in Cleveland County, Oklahoma; and (3) another DUI and driving under suspension, transporting an open container and possession of paraphernalia in 2007 in Cleveland County, Oklahoma.  ROA.6459-6465; ROA.2703.  The only known criminal history regarding Doe was in Oklahoma and did not include any report of property damage, violent crimes, interpersonal crimes, or any sexually motivated crimes.  ROA.6459-6465.  SWBTS does not automatically disqualify an applicant if they have a criminal record; however, it is something the admissions office looks into further.  ROA.9865-9871.  Doe also provided personal recommendations.  ROA.9871-9875; ROA.6450-6457.  SWBTS had no reason to

think Doe possessed any dangerous and/or exploitive propensities given the information disclosed during his admission as a SWBTS student. ROA.6750; ROA.6715-6722; ROA.6450-6456; ROA.6505-6506. Patterson had no knowledge of any criminal history or dangerous propensities by Doe. ROA.6750; ROA.6673.

Roe enrolled at SWBTS as an undergraduate student in the fall of 2014. ROA.1480. SWBTS provided information to its students and staff, along with a means for which to report sexual harassment, including an Academic Catalog containing a sexual harassment policy. ROA.6489-6491. Further, SWBTS had a non-discriminatory and sexual harassment policy included in its Part-Time Employee Handbook, which is substantially similar to the policy included in the student catalog. ROA.6476-6478. These sexual harassment policies were well-publicized by SWBTS, including the Part-Time Employee Handbook and student catalog, for which Roe admitted receipt of both. ROA.6508; ROA.6516-6518. Further, Roe signed an acknowledgment that the Part-Time Employee Handbook was reviewed with her by a human resources officer. ROA.6480-6481. The widely distributed sexual harassment policies define the prohibited conduct, provide a means of reporting violations, the consequences for a violation, and consequences for making a false accusation. ROA.6489-6491; ROA.6476-6478.

Additionally, SWBTS had a weapons policy in effect at the time of Roe and Doe's enrollment, as well as during the period Roe alleged to have been assaulted. ROA.6483-6485. The weapons policy included a list of weapons that were prohibited as well as exceptions to the policy, including employees who are licensed peace officers assigned to campus safety duties, high ranking faculty or staff with permission of the President of the Seminary, faculty, staff, or employees participating in training offered by the Seminary Security Department, certified law enforcement officers and military personnel in performance of their official duties.  ROA.6483. All students, faculty and staff were expected to promptly report anyone on campus for violating this policy, on or off campus, unless doing so would result in immediate physical harm. ROA.6485-6486.  A violation occurs when an unauthorized individual has weapons on campus and can include disciplinary action or a referral for criminal prosecution. ROA.6483-6484.   Scott Colter, Patterson's then-Chief of Staff, recalled SWBTS followed a standard university procedure that did not allow weapons on campus, except for instances of approval from the Chief of Security, the police department, the Vice President for Business Administration, and the President of SWBTS. ROA.6696-6697.  SWBTS's then-Director of Security, John Nichols, stated Doe was never authorized to possess a weapon on campus.  ROA.6668.

**B.**    *Roe's allegations regarding assaults by Doe*

In this lawsuit, Roe alleges Doe assaulted her during four time periods. It is undisputed that Roe's first report to SWBTS of such alleged assaults was on August 20, 2015, approximately four months after the final alleged assault. ROA.9765-9736; ROA.1486.

First, Roe alleged Doe assaulted her during October of 2014, at a cook-out following a football game. ROA.1482; ROA.9731. Second, Roe alleged Doe was continually verbally and physically violent towards her for two weeks following the initial assault. ROA.1482-1484; ROA.9732. Third, Doe alleged Roe sexually assaulted her at her campus residence in April 2015. ROA.1485; ROA.9734. Fourth, Doe alleged Roe sexually assaulted her in a campus restroom later in April 2015. ROA.1485; ROA.9735.

Roe further alleged that Doe insisted he was in a romantic relationship with Roe. ROA.1482, ¶57 ("Doe insisted the two were in a romantic relationship."). With respect to the two-week period following the claimed October 2014 initial sexual assault, Roe's own expert, Dr. Doyle, testified that Roe voluntarily went to Doe's apartment every evening "with the expectation that there was going to be sex" because Roe "felt like she was essentially married to him." ROA.12253-12254. Dr. Doyle did

2503874.2    2308.20

not use the term "consensual," but her testimony is unambiguous that Roe's actions were in fact consensual with respect to her relationship with Doe.

With respect to April 2015, around the time of the final two alleged assaults by Doe, it is undisputed Roe engaged in a sexual relationship with another individual, identified below by the pseudonym Joe Bloggs.  ROA.6709-6710.  Bloggs testified he and Roe had an "affair" because they were worried they would get kicked out of SWBTS if it was discovered, as it was against SWBTS's policies.  ROA.6709-6712. Bloggs did not recall Roe indicating she was sexually assaulted or harassed, he saw no evidence that would establish such claims, and he does not remember any bruising or recall her being nervous, psychologically upset, or depressed).  ROA.6712.

### C.    *On August 20, 2015, Roe first reported to Patterson Doe's alleged assaults and weapons violations*

During a meeting with Patterson on August 20, 2015, Roe made her allegations of sexual assault and firearm possession against Doe for the first time.   ROA.1486-1487; ROA.6523; ROA.6487 (Roe's first indication that she needed a meeting with Patterson); ROA.6739; (admission that Roe did not tell anyone at SWBTS prior to August 20, 2015).  Immediately following Roe's revelation, the Fort Worth police were called at the Director of Security's insistence with the agreement of Patterson, and a report was completed.  ROA.6523; ROA.6662; ROA.6681.

2503874.2    2308.20

Neither Patterson, nor any other employee at SWBTS was ever aware that Doe acted inappropriately, including harassment, sexual assault, stalking or violence, prior to August 20, 2015.     ROA.6750, ROA.6715-6722, ROA.6450-6456, ROA.6505-6506.     In fact, Roe admitted on multiple occasions she did not report the below incidents to anyone at SWBTS, as indicated by Roe's deposition excerpts:

- Roe did not report that Doe was staring at her prior to their official meeting, and she cannot recall if she even told anyone that he was staring.  ROA.6509.

- Roe did not report that Doe left notes on the windshield of her vehicle to anyone at SWBTS, but did inform her mother, who told their family friend, Lennie Knight.  ROA.6510, ROA.6656.

- Roe did not speak to Dr. Richard Knight (a family friend and physician/instructor at SWBTS) or any security at SWBTS regarding any alleged sexual assault or harassment she was experiencing. ROA.6511-6513.

- Roe did not report the first alleged assault, following the October 4, 2014 barbeque, to the police or anyone at SWBTS, including Dr. Patricia Ennis, Dr. Richard Knight, Lennie Knight, or Roe's mother. ROA.6514, ROA.6574-6575, ROA.6564, ROA.6654.

- The two-week period Roe alleges to have been under Doe's control and continually assaulted were not reported or mentioned to anyone at SWBTS.  ROA.6519-6520, ROA.6538-6540, ROA.6665.  Roe did not even report these allegations to the Fort Worth Police when the other allegations were made for the first time. ROA.6519-6520, ROA.6538-6540.

As repeatedly established, Roe failed to report any of the assaults to anyone at SWBTS until August 20, 2015.  ROA.6523; ROA.6487; ROA.6739.

At the initial August 20, 2015 meeting with Patterson, Roe also revealed Doe was in possession of unauthorized weapons.  ROA.1487-1488.  The undisputed evidence also established that Roe was aware for some time that Doe was in possession of firearms at his residence.  ROA.9733-9734.  As an employee herself, Roe had a duty to report Doe upon learning that he was in possession of prohibited weapons.  ROA.6483-6485.  Nevertheless, Patterson was never aware that Doe had firearms on campus prior to August 20, 2015.  COA.6750.

Following Roe's report, SWBTS security conducted a search of Doe's room and confiscated his firearms.  ROA.6493-6496.  After a discussion with Dr. Charles Patrick (Acting Vice President for Student Services and Communication at SWBTS at that time), Patterson, and the Director of Security, SWBTS determined that Doe's weapons violation must result in his expulsion.  ROA.6547; ROA.6670.  A letter dated August 25, 2015 to the Director of Student Services and the Director of Student Housing indicated that, as of August 25, 2015 at 4:46 pm, Doe was going to be expelled.  ROA.6501-6503; ROA.6547; ROA.6670.  According to Dr. Patrick, who sent the letter, this was the typical manner to inform of the expulsion of a student.  ROA.6547.

2503874.2    2308.20

### D.    *Aftermath of Roe's initial assault and weapons report*

Despite SWBTS's quick response following Roe's allegations, she retracted her statement with the Fort Worth police on August 24, 2015, and never went back to the police to prosecute Doe.   ROA.6524-6526; ROA.12248; ROA.12250-12251. When questioned concerning Patterson's reaction to her report, Roe provided the following testimony:

> Q.   And so, and in response to you coming to [Patterson], he did take some action by expelling the student and by notifying security about the issue and make sure that security notified the police, true?
>
> A.   True.

ROA.6532.   Further, SWBTS's Director of Security provided SWBTS security personnel enough information to provide protection in the event Doe might seek out Roe.   ROA.6663; ROA.6493-6496 (report to officers was "extremely confidential").  It was clear the officers were to keep an eye on Roe and that if she left her residence, the officers were to be in that area to provide protection.   ROA.6663.   This information was provided to Roe, who was advised to let the officers know if she left her residence, to make sure Roe had no issues with her safety on campus.   ROA.6663-6664.

### E.    *Alleged defamatory statements*

Roe alleged that SWBTS is liable for five defamatory statements.   ROA.1499-1500.   First, Roe alleged Patterson defamed her in 2016 through communications

2503874.2   2308.20

between Patterson and SWBTS professor Patricia Ennis.   ROA.10380-10381.

Second, Roe alleged Patterson defamed Roe in a May 22, 2018, meeting with the

SWBTS Board of Trustees, either individually or through his attorney, Shelby Sharpe.

ROA.10381-10382.   On May 30, 2018, several years after Roe's August 2015 report

to SWBTS regarding Doe, SWBTS's board of trustees relieved Patterson of his

position as SWBTS's president.   ROA.1492, ¶110.

Third, on May 31, 2018, Sharayah Colter, who was not employed by SWBTS,

published a blog titled "The Unknown Truth."   ROA.10384-10385; ROA.1493,

¶113; ROA.6975.   Fourth, on June 4, 2018, Shelby Sharpe, who was employed as

Patterson's attorney and did not represent SWBTS at the time, issued a "Release of

Facts" to the press responding to assertions made by the SWBTS Board of Trustees.

ROA.1493, ¶114; ROA.6985-6986.   Fifth, on June 29, 2018, Gary Loveless, who was

not employed by SWBTS, authored a letter intended for the Executive Board at

SWBTS regarding reinstating Patterson.   ROA.1493, ¶116; ROA.7000.

## SUMMARY OF THE ARGUMENT

Roe asks this Court to reverse the district court's summary judgments in favor

of SWBTS and Patterson as to her claims of negligence, gross negligence, and

defamation.   Contrary to Roe's claims that the district court applied an improper

standard of review by failing to view all evidence in her favor, the record shows the

2503874.2    2308.20

district court did apply such standard, as well as considering the undisputed evidence, in deciding to grant the summary judgments.

Further, the district court considered Roe's request to create a new legal duty under the circumstances of this case, and properly held the Texas multifactor test did not support creation of a new negligence duty, either as to SWBTS or as to Patterson. This is particularly true where Roe failed to meet her burden to raise a genuine issue of material fact as to foreseeability of Doe's alleged actions toward her.

Regarding Roe's defamation claims based on five alleged statements, the district court correctly held that some statements were not capable of a defamatory meaning as a matter of law.  Further, Roe failed to raise genuine material fact issues regarding whether other statements were "of and concerning" her as opposed to other matters, and failed to establish damages caused by any alleged defamatory statement.  With respect to SWBTS, Roe failed to raise any genuine issue of material fact regarding her claim that any employee or agent of SWBTS was acting within the course and scope of employment with SWBTS while making an alleged defamatory statement, and that such alleged statement furthered SWBTS's business, the required legal standards.

SWBTS has identified certain arguments Roe was waived by failing to adequately brief them, or to point to any evidence in the record to support them.

2503874.2    2308.20

Even if this Court reaches such arguments, they are without merit. For these reasons, this Court should affirm the district court's summary judgments in favor of SWBTS.

## STATEMENT OF THE STANDARD OF REVIEW

"Summary judgment is appropriate only when 'the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282-83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by the evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Rule 56 requires that there be no "genuine issue of material fact" to succeed on a motion for summary judgment, the mere existence of some alleged factual dispute is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when, under the relevant substantive law, its resolution may govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248).

As the party seeking summary judgment below, SWBTS bore the initial burden of showing the absence of any genuine issue of material fact as to an essential element of Roe's pled claims. *Anderson*, 477 U.S. at 247-248; *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the Defendant has properly supported its motion, the burden shifts to the Plaintiff to demonstrate any genuine issues of material fact as to each element of its claims, using evidentiary sources set forth in Rule 56(c). *See Id. at* 324.

Courts consider the evidence in the light most favorable to the nonmovant, but the nonmovant may not rely on mere allegations in the pleading; rather the nonmovant must respond to the motion for summary judgment by providing particular facts showing that there is a genuine issue for trial. *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## ARGUMENT

## I.  The district court applied the correct standard of review

Roe argues the district court failed to apply the correct summary judgment standard of review, specifically, viewing the evidence in the light most favorable to her,

as the nonmovant.  *See Brief for Plaintiff-Appellant*, pp. 18-21.  She argues the district court improperly "disregarded evidence and drew inferences against Roe," resulting in an "*unflattering*" view of the evidence.  *Id*., p.19 (emphasis in original).

As an example, Roe complains the district court improperly evaluated testimony regarding alleged foreseeability by SWBTS of Doe's alleged sexual assault of Roe.  The cited evidence was Roe's own testimony that her mother reported Doe "stalking" Roe to Lennie Knight, a Roe family friend who was married to SWBTS campus physician and professor Dr. Richard Knight, but was not herself a SWBTS employee.  *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2632803, at *9 (E.D. Tex. Mar. 25, 2023).  Lennie Knight testified Roe's mother described Roe "having trouble with a young man," but was unsure about the term "stalk."  *Id.*  In turn, Dr. Knight testified he was aware Doe was leaving notes on Roe's car windshield and that Roe was not interested in Doe.  *Id.* at *10.

The district court then applied the very standard Roe complains of here, holding, "resolving this issue in favor of Roe, the Court assumes, for purposes of summary judgment, that SWBTS professor and campus physician Richard Knight was apprised, via Roe's mother, of Roe's apparent concern that Doe was stalking her and engaging in unwanted contact by leaving notes on Roe's windshield."  *Id.*  In its foreseeability analysis, the district court further noted it was undisputed "Roe never

told anyone at SWBTS of her concerns about Doe," including Dr. Knight, with whom Roe had classes during the relevant time period. The district court also noted the undisputed evidence that, despite the alleged stalking and notes, prior to the first alleged assault, Roe spoke with Doe for extended periods of time by phone, and accepted flowers from Doe. *Roe*, 2023 WL 2632803, at *14.

Considering this entire record, as required under *Matsushita*, the district court properly concluded there was no merit to Roe's argument that indirect reporting to Dr. Knight of alleged stalking by Doe made the claimed sexual assaults foreseeable to SWBTS. 475 U.S. at 587 (holding no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."). Further, the district court applied guidance from the Texas Supreme Court regarding foreseeability, and specifically noted that it had considered the "totality of Doe's past criminal conduct, the "suspicious student" report, and Roe's mother's allegations of stalking." *Roe*, 2023 WL 2632803, at *14, *citing Bos v. Smith*, 556 S.W.3d 293, 305 (Tex. 2018) (analyzing character and severity of prior acts in foreseeability assessment). Accordingly, the district court followed the proper standards in considering evidence in the light most favorable to Roe, in considering the undisputed evidence, and holding Roe failed to raise genuine, material fact issues with respect to the elements SWBTS (and Patterson) challenged. For these reasons, this Court should affirm.

II.    **Response to Roe's First and Second Issues: The district court correctly held SWBTS and Patterson owed Roe no legal duty under the Texas multifactor test, and properly applied the summary judgment standards to grant SWBTS and Patterson summary judgment as to Roe's negligence and gross negligence claims**

A.    *Roe has waived certain negligence claims by failure to adequately brief same before this Court*

The district court recognized Roe asserted four negligence claims against SWBTS: (1) vicarious liability for the actions of Patterson; (2) existence of a legal duty owed by SWBTS to Roe under the Texas multifactor test; (3) liability by SWBTS for alleged failure to train or supervise Patterson; and (4) liability by SWBTS for alleged failure to supervise Doe as a student-plumber. *Roe*, 2023 WL 2632803, at *11. Before this Court, Roe has failed to brief any vicarious liability claim against SWBTS for Patterson's actions; in fact, the word "vicarious" does not appear in her brief at all. Such failure constitutes waiver. *See* FED. R. APP. P. 28(a)(9)(A); *Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018). Further, Roe makes no specific argument regarding SWBTS's alleged negligent training and supervision of Patterson, or SWBTS's alleged negligent supervision of Doe as a student-plumber, aside from conclusory statements that a reasonable jury could find such liability. *Brief*, pp. 34-35. Accordingly, Roe has waived such claims. *Sindhi*, 905 F.3d at 334.

Even if Roe had briefed such claims, applying Texas negligence law and the multifactor test, the district court properly held summary judgment was proper as to all of Roe's negligence claims, as well as Roe's gross negligence claim.

**B.    *The district court correctly held SWBTS did not owe Roe a duty under the Texas multifactor duty test***

To sustain a negligence claim, Roe was required to produce evidence of a legal duty owed by SWBTS to her, a breach of that duty, and damages proximately caused by that breach. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). The threshold inquiry is the existence of a duty, which is a question of law for the courts. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017). As a general rule, Texas courts have held "there is no legal duty in Texas to control the actions of third persons." *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995).

Below, Roe advocated for application of the Texas multifactor risk-utility test, asking the district court to create a negligence duty between Roe and SWBTS (alone or through its president, Patterson). ROA.9709-9711. The factors courts consider under such test may include: "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant," with foreseeability being the dominant but not dispositive consideration.

2503874.2    2308.20

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Roe also urges this Court to apply the multifactor test.

Roe argues in passing that the social utility is low and the burden on SWBTS to act is not large. *Brief*, pp. 21-22. Roe has failed to provide citations to the record or to case authority that support her conclusory argument as to such factors. Without conceding that Roe has adequately briefed such issues, SWBTS denies such factors weigh in favor of Roe. As the district court noted, it "would impose an unreasonable and unworkable burden on" schools such as SWBTS to investigate any alleged "unwanted romantic pursuit," in the absence of evidence that a student had committed a sexual offense, a violent offense, or threatened someone at school. *Roe*, 2023 WL 2632803, at *14. And, the undisputed evidence established that Roe herself knew more than SWBTS about the risk she claims Doe posed to her. *Id.*; ROA.9730-9731. Accordingly, such factors weigh in favor of declining to create a legal duty under the multifactor test. SWBTS addresses the below, in the order raised in Roe's brief.

### C. *The district court correctly held Patterson did not owe Roe a duty under the Texas multifactor duty test (briefed by Patterson and adopted by SWBTS)*

Again, before this Court, Roe has failed to brief any vicarious liability claim against SWBTS for Patterson's alleged acts or omissions, so has waived such claim. *Sindhi*, 905 F.3d at 334. Regardless, SWBTS adopts and incorporates by reference

Patterson's arguments, authorities, and evidence regarding application of the multifactor test to the extent applicable to any vicarious liability claim Roe may have against SWBTS for Patterson's alleged negligence.  FED. R. APP. P. 28(i).

**D.     *Roe failed to raise a genuine issue of material fact regarding proximate cause***

The test to determine proximate cause includes two elements: foreseeability and cause-in-fact.  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).  The test for cause-in-fact is whether the act and/or omission alleged was a substantial factor in causing the injury "without which the harm would not have occurred."  *Id.*  The test for the foreseeability is whether the "actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others."  *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).  Roe's arguments regarding the two elements of foreseeability are without merit.

**1.     Roe has waived any argument regarding cause in fact and, regardless, there is no genuine material fact that any act or omission by SWBTS was a cause in fact of Roe's alleged injuries**

Roe argues that "ample circumstantial evidence" viewed in her favor "supports a finding that SWBTS' acts and omissions were a cause in fact of Jane's injuries."  *Brief*, p.35.  Yet, Roe cites no such supporting evidence in support of her argument.  Nor does she cite any case supporting an argument that she has raised a genuine issue of material fact on the element of cause in fact based on any cited evidence of a

"substantial factor" in causing her claimed injuries. Such failure constitutes waiver. *See* FED. R. APP. P. 28(a)(9)(A); *Sindhi*, 905 F.3d at 334. Because Roe failed to brief the essential element of cause in fact, she cannot meet her burden to show there is a genuine issue of material fact with respect to foreseeability. Accordingly, this Court should affirm the summary judgments as to Roe's negligence and gross negligence claims.

Even if Roe had not waived the issue, she has failed to raise a genuine material issue regarding the essential element of cause in fact. No act or omission by SWBTS was a substantial factor in bringing about Roe's claimed injuries, "without which the harm would not have occurred." *Boys Clubs*, 907 S.W.2d at 477. Further, under Texas law, there is no cause in fact where SWBTS's alleged negligence "did no more than furnish a condition which made the injury possible." *Id.*

No act or omission by SWBTS caused the stalking behavior, firearm possession, or assaults Roe alleges Doe committed against her. Further, as recognized by the district court, it is undisputed that "Roe herself had appreciably more knowledge of the risks that Doe posed to her than did SWBTS," including his possession of firearms (which Roe did not report for ten months), her claim that Doe had "mental health issues," that he claimed to be "suicidal," and that he had "an extensive criminal history." *Roe*, 2023 WL 2632803 at *14; ROA.9730-9732. For these additional

2503874.2    2308.20

reasons, Roe failed to raise a genuine material fact issue regarding the essential element of cause in fact, such that she could meet her burden to create a duty under the multifactor test. Accordingly, this Court should affirm the summary judgments as to Roe's negligence and gross negligence claims.

> **2.** **There is no genuine material fact that Doe's alleged assaults on Roe were foreseeable**

A majority of Roe's argument is for creation of a legal duty against SWBTS and Patterson based on foreseeability. *Brief*, pp. 25-35. Her arguments regarding four specific topic areas are without merit.

> **a.** SWBTS's admission policies and procedures

Roe states that SWBTS did not require a criminal background check for applying students in 2013, at the time Doe applied and was admitted to SWBTS, while another seminary where Patterson previously worked did require such a check. *Brief*, p.27. Even viewing such evidence in the light most favorable to Roe, she has failed to provide any evidence that criminal background checks were required by any governing body. Nor does she argue that SWBTS failed to meet any such standard. In fact, this portion of her argument simply copies-and-pastes her response to SWBTS's summary judgment motion without applying the appellate standards or adding any argument. *Brief*, p.27; ROA.9712-9713. Accordingly, her argument is without merit and does not serve as a basis for this Court to reverse.

**b.** <u>Doe's application and admission</u>

In this argument section, Roe again repeats verbatim much of her argument from her summary judgment response, without accounting for SWBTS's reply arguments below. *Brief*, p.27; ROA.9713-9716. Roe argues, as she did below, that SWBTS's Director of Admission at the time of Doe's matriculation, Kyle Walker, testified that that the recommendation from a Southern Baptist Church pastor holds the greatest weight in SWBTS's application process. *Brief*, p.27. Roe argues Walker pointed to a recommendation by Todd Theissen, whom Walker testified was pastor of the First Baptist Church in Purcell, Oklahoma when, in fact, Thiessen was not the pastor and had not spoken with Walker regarding Doe's application. *Brief*, p.27.

Despite Walker's recollection, the documents in evidence establish Thiessen was one personal recommendation for Doe; Deacon Michael Dillinger of Purcell First Baptist Church was Doe's church recommendation for admission. ROA.7468; ROA.7473-7474. Walker's mistake regarding the name of the pastor recommending Doe does not raise a genuine issue of material fact regarding any of Roe's negligence claims against SWBTS, and is not a basis for reversal.

Roe also argues that SWBTS's admission policy was lax, that SWBTS improperly admitted Doe despite his being on probation for DWI at the time of admission, and there was no evidence that SWBTS provided Doe with a mentor to

discuss Doe's ministry training progress. *Brief*, pp. 28-29. Even if SWBTS negligently violated its admission policies—which it denies—that merely allowed Doe to become a student. There is no evidence that SWBTS should have anticipated that admitting Doe while on DWI probation created the danger of his alleged sexual assault. *City of Mesquite*, 830 S.W.2d at 98; *see also Boys Clubs*, 907 S.W.2d at 478 (holding sexual assault of children was not foreseeable to the defendant where evidence of "prior DWI convictions did not indicate criminal conduct in any way akin to sexual assault of young boys"); *Frith v. Fairview Baptist Church*, No. 05-01-01605-CV, 2002 WL 1565664 (Tex. App.–Dallas July 17, 2002, pet. denied) (not designated for publication) (sexual assault not foreseeable based on convictions for burglary, controlled substances, and unlawful carrying of weapon); *Houser v. Smith*, 968 S.W.2d 542, 545 (Tex. App.–Austin 1998, no pet.) (sexual assault not foreseeable based on three forgery convictions); *see also Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding criminal history of cocaine use did not make actor's participation in robbing his employer and murdering a fellow employee reasonably foreseeable).

Roe failed to present any evidence raising a genuine issue of material fact that a prior DWI would make a sexual assault foreseeable. Accordingly, this Court should affirm.

**c.** Actions after admission

Before this Court, Roe repeats verbatim a timeline she created in response to SWBTS's summary judgment motion. *Brief*, pp. 30-32; ROA.9716-9717. Once again, she fails to provide any argument regarding how the cited evidence—regarding Doe's DUI record, a "suspicious student" report regarding Doe acting erratically, and his alleged possession of firearms on campus—raises a genuine issue of material fact regarding the essential element of foreseeability as to Doe's alleged sexual assaults of Roe. *Boys Clubs*, 907 S.W.2d at 478.

Moreover, the district court specifically noted it analyzed the "suspicious student" report, which detailed that Doe wanted to speak with then-SWBTS Police Chief John Nichols or SWBTS chaplain Dean Nichols, that the investigating SWBTS officers escorted Doe to the home of Dean Nichols, and that nothing in the report "put SWBTS on notice that Doe posed a danger to other students." *Roe*, 2023 WL 2632803, at *8; ROA.10192. The district court properly held that such evidence, viewed in the light most favorable to Roe, and coupled with the undisputed evidence, failed to raise any issue of foreseeability by SWBTS that Roe could cause Doe's alleged injuries. *Roe*, 2023 WL 2632803, at *14; *Boys Clubs*, 907 S.W.2d at 478. Accordingly, this Court should affirm.

**d.**   Sexual harassment policies and procedures

Roe repeats verbatim her argument below that SWBTS's sexual harassment policies were ineffective and not enforced by SWBTS, and that Patterson created a culture that encouraged sexual harassment of women like her, making Doe's alleged sexual assault of her foreseeable.  *Brief*, pp. 32-35; ROA.9717-9720.  Yet, she fails to raise any genuine issue of material fact that any claimed lack of supervision of Doe by SWBTS made the alleged sexual assaults foreseeable.  And, it is undisputed the first disclosure Roe made regarding any alleged sexual harassment or sexual assault by Doe was during her August 20, 2015 report to SWBTS, many months after the claimed assaults.  *Roe*, 2023 WL 2632803, at *4.  As argued above, in the absence of some evidence SWBTS had knowledge of violent conduct by Doe toward Roe, there can be no genuine fact issue regarding foreseeability of a sexual assault.

The same is true for SWBTS's supervision of Patterson.  Roe's conclusory allegations that Patterson created a culture that allowed women to be sexually harassed, leading to sexual assault are unsupported by admissible, sufficient evidence.  *See Matsushita*, 475 U.S. at 586-587 (holding a respondent plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts.");  *Allen v. Wal-Mart Stores Tex., LLC*, No. 6:19-CV-00478, 2020 WL 4805444, at *1 (E.D. Tex. Aug. 18, 2020) ("unsubstantiated assertions, improbable inferences, and

2503874.2   2308.20

unsupported speculation are not competent summary judgment evidence"). And, even viewing the admissible evidence in the light most favorable to Roe, her claims that other women reported sexual harassment on campus after she disclosed her alleged sexual assaults cannot create backwards-looking foreseeability.

For these reasons, this Court should affirm.

### E.     *Roe failed to raise genuine issues of material fact regarding the essential elements of her gross negligence claim*

The parties agree that Texas gross negligence claims require clear and convincing evidence of both an objective and a subjective element regarding SWBTS's knowledge of an extreme risk of harm to Roe. *See* TEX. CIV. PRAC. & REM. CODE § 41.011(11). In support, Roe simply argues she has "offered ample circumstantial and direct evidence that SWBTS, through its agents, had actual awareness of the risk of harm to Roe but did not care." *Brief*, p.36. Roe has failed to direct this Court or SWBTS to citations for any evidence that SWBTS's agents had actual subjective awareness of a risk that Doe would allegedly sexually assault her or threaten her with firearms, but did not care. Nor does Roe provide any evidence of which SWBTS employees or agents allegedly engaged in such acts, or ratification, or malice, additional elements Roe must prove to establish gross negligence liability for the alleged criminal acts of an employee. *See* TEX. CIV. PRAC. & REM. CODE § 41.005(c). Further, because Roe's ordinary negligence claims fail, her gross negligence claims

must fail. *See Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) ("A plaintiff who cannot support a negligence cause of action cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence."). Accordingly, the district court properly granted SWBTS summary judgment, and this Court should affirm.

**F.     *Roe's arguments regarding witness credibility are without merit***

Roe raises a scattershot argument regarding witness credibility, arguing summary judgment was improper as to her negligence claims due to claimed "conflicts among the testimony of Patterson and the SWBTS' witnesses." *Brief*, p.37. Such claimed "conflicts" were a substantial part of Roe's two sanctions motions against SWBTS—in fact, Roe made claims of perjury—which the district court denied after multiple briefs and a lengthy hearing. ROA.1944-1964; ROA.2009-2026; ROA.2606-2708; ROA.2709-2778; ROA.2126-2161. Roe did not appeal such ruling, but nevertheless asserts the claimed conflicts merit reversal of the summary judgments.

Regarding Roe's argument that Patterson's testimony conflicts with that of SWBTS's prior Chief of Security John Nichols regarding whether Patterson ever communicated with Doe regarding Roe's allegations of sexual assault, any alleged conflict does not raise a genuine issue of material fact to foreseeability or any other issue, as the allegedly conflicting communication occurred during Doe's expulsion, a

few days after Roe first reported the incident to SWBTS in August of 2015.

ROA.8732-8733.  Regarding Roe's argument that there are conflicts in the testimony

of Dean Nichols and John Nichols regarding reports to SWBTS of sexual harassment,

stalking or sexual assault of students other than Roe, such other complaints are not

relevant to Roe's claims that Doe engaged in such behavior as to her.  *Brief*, p.37.

Regarding Roe's argument that two SWBTS employees implied that Roe and

Doe were in a romantic relationship, while Roe's witnesses stated they had never seen

Roe and Doe together, such alleged conflict is not material to Roe's claims.  In fact,

the district court described Doe's actions as "allegedly unwanted romantic pursuit" of

Roe.  *Roe*, 2023 WL 2632803, at *14.  And, Roe's own expert, Dr. Doyle, testified

that Roe voluntarily went to Doe's apartment every evening for two weeks after the

alleged October 2014 assault "with the expectation that there was going to be sex"

because Roe "felt like she was essentially married to him."  ROA.12253-12254.  Dr.

Doyle did not use the term "consensual," but her testimony is unambiguous that Roe's

actions were in fact consensual with respect to her relationship with Doe.  Because

none of these alleged "conflicts" in testimony is relevant to any of Roe's claims against

SWBTS, they are neither material nor genuine fact issues that could serve as a basis

for this Court to reverse the summary judgments.

2503874.2   2308.20

**III.**   **Response to Roe's Third Issue: The district court properly held Roe failed to meet her burden to raise genuine issues of material fact as to the essential elements of her defamation claim against SWBTS and Patterson**

To sustain a defamation claim, Roe was required to produce evidence of four essential elements: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement; and (4) damages, unless the statement constitutes defamation per se.  *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).  A defamatory statement must be directed at the plaintiff as an ascertainable person to be actionable, and must be referenced in the complained of statement.  *Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433 (Tex. App.—Austin 2007, pet. denied) (citing *New York Times v. Sullivan*, 376 U.S. 254, 288, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).  A publication is "of and concerning the plaintiff" if persons who knew and were acquainted with the plaintiff understood from viewing the publication that the defamatory matter referred to her. *Id*. It is not necessary that the plaintiff be specifically named in the communication to be defamatory, but it must be clear to those who know and are acquainted with the plaintiff that the defamatory statement is directed to her.  *Id*.

2503874.2   2308.20

Roe alleged different defamation claims against SWBTS and Patterson. The timing of the five[1] alleged publications is important, as some were made after Patterson was no longer employed by SWBTS. First, Roe alleged Patterson defamed her in 2016 through communications with SWBTS professor Patricia Ennis. ROA.10380-10381. Second, Roe alleged Patterson defamed Roe in a May 22, 2018, meeting with the SWBTS Board of Trustees, either individually or through his attorney, Shelby Sharpe. ROA.10381-10382. On May 30, 2018, several years after Roe's August 2015 report to SWBTS regarding Doe, SWBTS's board of trustees relieved Patterson of his position as SWBTS's president. ROA.1492, ¶110.

Third, on May 31, 2018, Sharayah Colter, who was not employed by SWBTS, published a blog titled "The Unknown Truth." ROA.10384-10385; ROA.1493, ¶113; ROA.6975. Fourth, on June 4, 2018, Shelby Sharpe, who was employed as Patterson's attorney and did not represent SWBTS at the time, issued a "Release of Facts" to the press responding to assertions made by the SWBTS Board of Trustees. ROA.1493; ROA.6985-6986. Fifth, on June 29, 2018, Gary Loveless, who was not employed by SWBTS, authored a letter intended for the Executive Board at SWBTS regarding reinstating Patterson. ROA.1493, ¶116; ROA.7000. Both SWBTS and

---

[1]     As noted by the district court, Roe "has disclaimed any reliance on the CNN article, both through her statements at the summary-judgment hearing and by failing to produce the article to the Court." *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2787956, at *12 (E.D. Tex. Apr. 4, 2023).

2503874.2     2308.20

Patterson moved for summary judgment regarding the alleged defamatory statements Roe ascribed to them.  ROA.6760; ROA.6235.

### A.     *The district court correctly held Roe failed to raise genuine material fact issues regarding the essential elements of her defamation claims made directly against Patterson*

Roe raises arguments regarding alleged defamation by Patterson, individually, and through alleged agents of Patterson.  *Brief*, pp. 46-65.  It is undisputed that SWBTS terminated Patterson on May 30, 2018.  ROA.1492, ¶110.  Accordingly, SWBTS cannot be vicariously liable for any allegedly defamatory statements made by Patterson after that date, as there is no basis to argue he was an employee or agent of SWBTS.  *See, e.g., Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (analyzing vicariously liability by an employer for an employee's alleged torts).  Here, "The Unknown Truth," the Sharpe "Release of Facts," and the Loveless Letter were all issued after Patterson's employment with SWBTS terminated.  Accordingly, even if there were a genuine material fact issue regarding Patterson's involvement in such alleged defamatory statements—which SWBTS does not concede or espouse—such statements cannot be attributed to SWBTS through vicarious liability.  For these reasons, summary judgment is proper as to Roe's defamation claims against SWBTS based on vicarious liability through Patterson, and this Court should affirm.

2503874.2   2308.20

Additionally, SWBTS cannot be vicariously liability for the two allegedly defamatory statements made during the term of Patterson's employment, as argued below.

### B. *The district court correctly held Roe failed to raise genuine material fact issues regarding the essential elements of her defamation claims against SWBTS*

In her brief, Roe's arguments jump around between the elements of her defamation claims and the five alleged defamatory statements, without matching up each of the essential elements with each of the statements. *Brief*, pp. 38-69. In the interest of clarity and consistency, SWBTS will address each statement in turn, as the district court did, with argument on the challenged elements for each statement.

#### 1. "The Untold Truth"

Scott Colter was employed by SWBTS as Patterson's Chief of Staff in 2018, until Patterson's termination; his duties included managing Patterson's office, calendaring appointments, forwarding correspondence, and other administrative responsibilities. ROA.6919-6921. On May 31, 2018, Scott Colter's wife, Sharayah Colter, who was not employed by SWBTS, published a blog titled "The Unknown Truth." ROA.1493, ¶113; ROA.6975. Colter both wrote and testified she "compiled this account of the truth completely of [her] own volition." ROA.6978; ROA.6970. Colter wrote the article in conjunction Candi Finch, who was a SWBTS adjunct instructor at the time. ROA.6953-6956. Dr. Finch made the independent decision

to help Colter write the article without knowledge or direction of Patterson or SWBTS.  ROA.6960-6953; ROA.6924-6925.

Roe identified two statements in "The Untold Truth" she claims are defamatory. *Brief*, pp. 42-43.  The first statement was that Patterson called the police to report a rape claimed by "a Southwestern Seminary student…even when the student asked him not to do so," and the female student refused to press charges.  The second statement was to the effect that the accused rapist admitted to sexual relations, but claimed the woman consented and the accused showed the police evidence of such consent.  Roe argues such statements are capable of a defamatory meaning, were impliedly false, and were made by SWBTS employees. *Brief*, pp. 43, 65.  She does not argue—and the district court did not hold—that such statements were "of and concerning" Roe, as required under Texas law. *Penick*, 219 S.W.3d at 433.

The district court held neither statement was reasonably capable of a defamatory meaning against Roe because, even if portions of the statements were incorrect, neither was a statement that Roe had lied about her sexual assault allegations, or had given a false statement to police, or sent nude photos to Doe voluntarily. *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2787956, at *13 (E.D. Tex. Apr. 4, 2023).  This is so because the gist of "The Untold Truth" is about Patterson and the allegations against him, not about Roe and her allegations against

Doe. *See Wheeler v. New Times, Inc.*, 49 S.W.3d 471, 474 (Tex. App.–Dallas 2001, no pet.) (holding gist of the article was "critical of Dallas's urban rehabilitation efforts" and improper demolition of certain properties, and did not "expressly criticize Wheeler"). Accordingly, the district court properly held as a matter of law that "The Untold Truth" was not defamatory. This Court should affirm.

Further, the district court held that, even assuming the statements were defamatory against Roe, SWBTS was not liable for them, as they were not made by SWBTS employees acting in the course and scope of their employment. Roe, 2023 WL 2787956, at *19. In fact, "The Untold Truth" is contrary to the interests of SWBTS, as the article criticized SWBTS for terminating Patterson. On appeal, Roe has not specifically challenged such element as to this statement. For this additional reason, this Court should affirm.

Additionally, SWBTS does not concede that the statement that "the female student refused to press charges" is false. On this point, Roe testified:

> Q.   ...You didn't want him [Doe] to be prosecuted, did you?
>
> A.   Not at that time.
>
>                    * * *
>
> Q.   And it's truthful, in this Exhibit No. 14 on Bates stamp 1104, where you made the statement it says in the report "She

> doesn't want him prosecuted."  And it's
> referring to [Doe] and that's an accurate
> statement, correct?

A.  Yes, sir.

ROA.6815-6816.  Further, in her August 24, 2015 recorded statement to the Fort

Worth Police Department, Roe stated:

> JANE ROE:  Well, I would just like to withdraw
> the whole thing.  I don't want to go any
> further with it.  I don't want--I--I--I just
> don't want to have to deal with this.  I don't
> want him being arrested.  I don't want it going
> to court.
>
>                   * * *
>
> JANE ROE:  Yes. I probably will look into that
> at some point in the near future, but as far
> as just the whole legal aspect of this, my—my
> desire is that this not be pursued--
>
> DETECTIVE ADCOCK:  Okay.
>
> JANE ROE:  --step further.
>
>                   * * *
>
> JANE ROE:  Okay.  Is it possible for this to
> be closed and for--
>
> DETECTIVE ADCOCK:  Yes.
>
> JANE ROE:  --this file to be--
>
> DETECTIVE ADCOCK:  Yes.
>
> JANE ROE:  --just buried?

2503874.2   2308.20

`DETECTIVE ADCOCK:  If that's your wish.`

ROA.12246-12251.  SWBTS respectfully submits that Roe asking for the charges against Doe to be "buried" or "withdrawn" or "not going to court" are synonymous with a refusal to press charges and, thus, is not false or defamatory.  For this additional reason, this Court should affirm.

### 2.    The Sharpe "Release of Facts"

It is undisputed that the "Release of Facts" was made on June 4, 2018, by Shelby Sharpe, an attorney who had represented Patterson individually during the relevant time period.  ROA.6985.  Below, Roe argued that the following statement from that press release defamed her: "The student in question had given several different accounts of her story to authorities, school administration, and her family.  Dr. Patterson was seeking to understand what actually occurred among the many contradictory statements." ROA.9441.  Roe does not clearly make that assertion to this Court.

Nevertheless, Roe has abandoned her argument that SWBTS is responsible for the "Release of Facts," omitting that publication from the list of claimed defamatory statements allegedly made by SWBTS agents.  *Brief*, p.65.  This is consistent with the district court's holding that "any involvement Scott Colter or Candi Finch had with respect to the Sharpe 'Release of Facts' was plainly outside the scope of their

employment with SWBTS, and Roe has otherwise failed to point to evidence showing that SWBTS somehow 'authorize[d], condone[d], or ratif[ied]' Sharpe's press release." Roe, 2023 WL 2787956, at *19.  Accordingly, this Court should affirm.

### 3.    The Loveless Letter

Gary Loveless's June 29, 2018 Letter was to the SWBTS Executive Committee of the Board of Trustees to express the donor signatories' displeasure regarding the Board terminating Patterson as SWBTS president.  ROA.10901-10907.  The allegedly defamatory statements included mention that the Board "knew full well that the female student's allegations of rape were false," that she begged Patterson not to call the police, and that she wanted Patterson to help her "recant her false allegations of rape."  ROA.8956; ROA.1494-1495; ROA.10369-10370.

Loveless testified that he and attorney Susan Oliver prepared the Letter. ROA.6994-6998.  As noted by the district court, it is undisputed that neither Loveless nor Oliver were employees of SWBTS or Patterson at any relevant time. *Roe*, 2023 WL 2787956, at *16.  Roe argued SWBTS may nevertheless be liable for the content of the Letter because SWBTS employees Scott Colter, Candi Finch, Dean Nichols, and John Nichols were allegedly heavily involved in the preparation of the Letter, as evidenced through a series of emails.  ROA.10386-10389.

2503874.2    2308.20

Roe argues the district court overlooked a series of emails and text messages between Colter and various SWBTS donors that were connected with the Loveless Letter, and that such communications established that Patterson was involved in drafting the Letter, or had ratified it. *Brief*, pp. 58-64. With respect to SWBTS, she also argues there are fact issues regarding the involvement of then-SWBTS employees John Nichols and Dean Nichols with respect to the Loveless Letter. *Brief*, pp. 65-66. Without any record citation, Roe claims that John Nichols spoke with Colter—Roe doesn't identify which Colter—regarding Roe's report about Doe, at some unknown time. She also complains that Dean Nichols testified he did not remember whether he had spoken with any of the donor signatories on the Letter about Roe's report.

Even viewing such claims in the light most favorable to Roe, none of these raise a genuine issue of material fact that a SWBTS employee was involved in alleged defamatory statements in the Loveless Letter. And, the scope of the Letter was to criticize SWBTS for terminating Patterson, which is in direct opposition to SWBTS's interests. On this point, the district court held, "any involvement of Colter, Finch, Dean Nichols, and John Nichols in connection with the Loveless Letter was decidedly outside the scope of their employment with SWBTS." *Roe*, 2023 WL 2787956, at *20. Further, Roe does not argue—and the district court did not hold—that such statements were "of and concerning" Roe, as required under Texas law. *Penick*, 219

S.W.3d at 433. For these reasons, Roe failed to meet her burden to raise a genuine material fact issue establishing SWBTS or anyone acting on its behalf published the Loveless Letter. Accordingly, this Court should affirm.

### 4.     Patterson's May 2016 statements to Patricia Ennis

Roe alleges Patterson personally defamed her at some point in May 2016 by making false statements about Roe to SWBTS professor Patricia Ennis regarding Doe telling Patterson that Doe had nude photos of Roe, thus allowing Ennis to imply that Roe and Doe were in a consensual sexual relationship and the photos were voluntary. *Brief*, pp. 46-48. However, an implication is not enough to establish the essential element of a defamation statement, as Roe is required to identify the specific defamatory statement made by Patterson, not the conclusory implication made by Ennis. *See, e.g., Ameen v. Merck & Co.*, 226 F.App'x 363, 370 (5th Cir. 2007) ("To recover on [a defamation] claim, the plaintiff must identify the alleged defamatory statement and the speaker" (citing *Abbott v. Pollock*, 946 S.W.2d 513, 520 (Tex. App.–Austin 1997, pet. denied)). Accordingly, this Court should affirm.

Additionally, for an employer to be liable for an employee's defamatory statement, the employee must have been acting within the course and scope of his employment, and for the benefit of his employer. *Minyard Food*, 80 S.W.3d at 578 (Tex. 2002). Roe has failed to distinguish or even address the *Minyard Food* case cited

by the district court in reaching its decisions.  Nor has Roe addressed case authority

from this Court, which relied in large part on the *Minyard Food* holdings.

In *Crouch v. J C Penney Corp., Inc.*, this Court recognized the Texas law elements

for holding an employer liable for alleged defamation by an employee, explicitly

relying on *Minyard Food*.  337 Fed. Appx. 399, 402 (5th Cir. 2009).  This Court noted

"the alleged defamation took place when an employee (Smith) spoke to his own

employer (JCP) about another employee (Crouch)," in the context of a JCP

investigation regarding Crouch's managerial skills.  *Id.*  This Court recognized that,

even when a workplace investigation may be required by the employer, discussions

regarding such an investigation are not "in furtherance of the employer's business and

for the accomplishment of the object for which the employee was hired." *Crouch*, 337

Fed. Appx. at 402-403, (citing *Minyard Food*, 80 S.W.3d at 577-579).

Here, it is undisputed the alleged defamatory statement was made by Patterson

solely to Ennis following Patterson's investigation of Doe's August 2015 claims against

Doe.  ROA.11143-11145.  Roe has not argued the alleged statement was widespread,

or even went beyond Ennis.  Regardless, Roe has failed to identify a genuine issue of

material fact to establish Patterson's alleged statement was made in the course and

scope of his employment, as required under Texas law.  *Crouch*, 337 Fed. Appx. at

402-403; *Minyard Food*, 80 S.W.3d at 577; see also *Moyer v. Jos. A. Bank Clothiers, Inc.*,

No. 3:11-CV-3076-L, 2013 WL 4434901, at *14 (N.D. Tex. Aug. 19, 2013) (applying *Minyard Food* and *Crouch*, and holding alleged defamation by employee not attributable to employer). And, Roe has identified no evidence in the appellate record that such alleged statement furthered SWBTS's business. *Id.* For these additional reasons, this Court should affirm.

### 5.    The May 22, 2018 meeting

Roe argues she was defamed either by Patterson directly or through his attorney Shelby Sharpe at a May 22, 2018, meeting between Patterson and the SWBTS Board of Trustees, based on a one-page document titled "Questions and Responses to Chairman Ueckert's Questions," which Roe alleges contained "Patterson's notes for responding to the Board of Trustees." *Brief,* p.48; ROA.10381; ROA. 8958; ROA.10771. Roe also argues then-SWBTS Chairman of the Board of Trustees Kevin Ueckert testified a Trustee recalled that that Patterson believed Roe's allegations against Doe not being factual due to "something about pictures." *Brief,* p.49. As noted by the district court, Roe failed to present any evidence that the one-page documents was ever published to the Board. *Roe,* 2023 WL 2787956, at *11. The same is true before this Court.

Additionally, as noted by the district court, Roe failed to produce any evidence that "Sharpe's allegedly defamatory statements to the SWBTS Board of Trustees were

made in furtherance of Patterson's employment with SWBTS." *Roe*, 2023 WL 2787956, at *21. Further, Roe failed to present any evidence that Patterson actually said to a Trustee that Roe's allegations were not factual or that Roe had retracted her allegations, or who that Trustee was, or the context. Again, Roe did not meet her burden to establish the existence of a defamatory statement. *Ameen*, 226 F.App'x at 370 ("To recover on [a defamation] claim, the plaintiff must identify the alleged defamatory statement and the speaker" (citing Abbott, 946 S.W.2d at 520)).

Further, even assuming Sharpe published such statements, they were defamatory, and Patterson made them while still employed by SWBTS—all which SWBTS disputes—Roe has failed to provide any evidence that Sharpe's allegedly defamatory statements to the SWBTS Board of Trustees were made in furtherance of Patterson's employment with SWBTS. *See, e.g., Minyard Food*, 80 S.W.3d at 578 (holding an employee's defamatory statements about two co-workers allegedly having an affair did not create liability for his employer, as the statements were made outside the course and scope of his employment and did not further employer's business); *Crouch*, 337 Fed. Appx. at 402 (same, in context of workplace investigation); *Moyer*, , 2013 WL 4434901, at *14 (same analysis). For these additional reasons, this Court should affirm.

C.     *The district court correctly held Roe failed to raise genuine material fact issues regarding the essential element of damages resulting from her defamation claims against SWBTS*

Out of an abundance of caution, SWBTS separately addresses the lack of damages, an essential element of Roe's defamation claim. In her briefing below, Roe did not identify any specific damages allegedly caused by any specific statement of SWBTS, aside from making a broad allegation of emotional distress from reading the Loveless letter, Sharpe's "Release of Facts," and "the Untold Truth" that persisted for a few weeks. ROA.10390. This fails to meet the standard for recovery of such damages in Texas, as it fails to describe any substantial disruption to her daily routine. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (holding recovery of mental anguish damages requires "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine."). Further, Roe failed to produce evidence that she received any medical attention specifically for any physical or emotional "injuries" alleged in this matter, apart from an STD test and a handful of counseling sessions.[2] Accordingly, Roe failed

---

[2]     ROA.6817-6820 (the only counseling/therapy Roe sought with spiritual advisor, Bill Gothard, and a church counselor); ROA.6867 (Dr. Ennis, a professor who saw Roe daily, testified she was upbeat and grades were good following alleged incidents); Ex. G p. 28, 83-84 (Dr. Knight advised Roe to seek medical attention, only got an STD test and handful of counseling sessions); see also ROA.6936-6939 (Joe Bloggs testified he and Roe engaged in a consensual sexual affair in April of 2015, around the time of the final alleged assaults, and Bloggs does not recall Roe indicating she was sexually assaulted or harassed, saw no evidence that would establish such claims, and does not remember any bruising or recall her being nervous, psychologically upset, or depressed).

　　　　　　　　2503874.2   2308.20

to raise a genuine issue of material fact regarding the existence of recoverable damages from SWBTS for her defamation claims.

Roe also alleged that the allegedly false statements are considered defamatory per se, such that damages are presumed. ROA.1500. A statement is defamatory per se only if it is so obviously hurtful to a person's reputation that the jury may presume general damages. *See Anderson v. Durant*, 550 S.W.3d 605, 618 (Tex. 2018). Under the common law, there are only four types of defamation per se: (1) injures occupation, (2) imputes crime, (3) imputes loathsome disease, and (4) imputes sexual misconduct. *See KTRK TV, Inc. v. Robinson*, 409 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Roe has failed to raise any genuine material fact issue that the alleged statements, assuming they were in fact false, are so obviously hurtful that they would do harm to her reputation. As established above, these statements did not even contain details that would identify Roe. And, even Plaintiff has admitted that she is not identifiable in the details included in the publications. ROA.6726-6738 (Roe's RFA Responses No. 12-21, 4-34, 37-48, 50-60). For these additional reasons, this Court should affirm.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant-Appellee Southwestern Baptist Theological Seminary respectfully requests that this Court affirm the district court's summary judgments in SWBTS's favor, and grant SWBTS general relief.

Respectfully submitted,

_ /s/ Bryan Rutherford_____
**Bryan Rutherford**
Texas Bar No. 24025628
BRutherford@MacdonaldDevin.com
**David M. Macdonald**
Texas Bar No. 12755300
DMacdonald@MacdonaldDevin.com
MACDONALD DEVIN MADDEN
  KENEFICK HARRIS, PC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
214.744.3300 telephone
214.747.0942 facsimile

-and-

**Michael D. Anderson**
Texas Bar No. 24031699
Michael.Anderson@KellyHart.com
KELLY HART & HALLMAN
201 Main Street, Suite 2500
Fort Worth, Texas 76102
817.332.2500 telephone
817.878.9280 facsimile

*Attorneys of Record for Defendant-Appellee*
*Southwestern Baptist Theological Seminary*

2503874.2   2308.20

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to the Federal Rules of Appellate Procedure, I certify that a true and correct copy of the foregoing *Brief of Defendant-Appellee's* was served on counsel for all parties of record via email and electronic service on October 27, 2023.

    /s/ Bryan Rutherford
**Bryan Rutherford**
*Attorney of Record for Defendant-Appellee*
*Southwestern Baptist Theological Seminary*

<u>**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because this brief contains 10,786 words, excluding the parts of the brief exempted by Rule 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in Microsoft Office Word 365 using  proportionally-spaced typeface Goudy Old Style and Courier New in 14-point, and in 12-point in footnotes.

Dated:  October 27, 2023

    /s/ Bryan Rutherford
**Bryan Rutherford**
*Attorney of Record for Defendant-Appellee*
*Southwestern Baptist Theological Seminary*

2503874.2    2308.20