No. 23-40281

_____

In the United States Court of Appeals
for the Fifth Circuit

_____

Jane Roe,

*Plaintiff-Appellant,*

v.

Leighton Paige Patterson;
Southwestern Baptist Theological Seminary,

*Defendants-Appellees.*

_____

On appeal from the United States District Court for the
Eastern District of Texas, Plano Division

_____

Appellee Brief of Leighton Paige Patterson

_____

**Travis J. Jones**
  Texas Bar No. 24101979
**James W. Grau**
  Texas Bar No. 08306350
**Grau Law Group, PLLC**
500 N. Akard St., Suite 1925
Dallas, Texas 75201
Telephone:  (214) 521-4145
Facsimile:   (214) 521-4320

*Attorneys for Appellee*
*Leighton Paige Patterson*

**No. 23-40281**

_____

**In the United States Court of Appeals
for the Fifth Circuit**

_____

**Jane Roe,**

*Plaintiff-Appellant,*

**v.**

**Leighton Paige Patterson;
Southwestern Baptist Theological Seminary,**

*Defendants-Appellees.*

_____

**On appeal from the United States District Court for the
Eastern District of Texas, Plano Division**

_____

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the

outcome of this case. These representations are made in order that the judges of this

Court may evaluate possible disqualification or recusal.

**The Zalkin Law Firm, P.C.**
Sheila P. Haddock
10590 W. Ocean Air Drive, Suite 125
San Diego, California 92130
*Trial and appellate counsel for
Plaintiff-Appellant Jane Roe*

**Hutchison & Foreman, PLLC**
Susan E. Hutchison
505 Pecan Street, Suite 102
Fort Worth, Texas 76102
*Trial counsel for Plaintiff-Appellant Jane Roe*

**Grau Law Group, PLLC**
Travis J. Jones
Jim Grau
500 N. Akard St., Suite 1925
Dallas, Texas 75201
*Trial and appellate counsel for*
*Defendant-Appellee Leighton Paige Patterson*

**Macdonald Devin Madden Kenefick Harris, P.C.**
Bryan Rutherford
David M. Macdonald
12770 Coit Road, Suite 1100
Dallas, Texas 75251
*Trial and appellate counsel for*
*Defendant-Appellee Southwestern Baptist Theological Seminary*

**Macdonald Devin Madden Kenefick Harris, P.C.**
Jennifer D. LeBlanc
12770 Coit Road, Suite 1100
Dallas, Texas 75251
*Trial counsel for*
*Defendant-Appellee Southwestern Baptist Theological Seminary*

**Kelly Hart & Hallman**
Michael D. Anderson
201 Main Street, Suite 2500
Fort Worth, Texas 76102
*Trial counsel for*
*Defendant-Appellee Southwestern Baptist Theological Seminary*

**The Hanover Insurance Group**
440 Lincoln Street
Worcester, Massachusetts 01653
*Insurer for Defendants-Appellees*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee Leighton Paige Patterson respectfully states that the limited questions of law and fact presented by this appeal are uncomplicated and do not require oral argument. However, if the Court believes that oral argument would assist it in resolving this case, Dr. Patterson reserves the right to appear and present argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ...................................................................... viii

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................................... 1

STATEMENT OF THE CASE .................................................................... 3

I.     Procedural History ................................................................. 3

II.    Rulings Presented for Review ................................................. 3

III.   Relevant Facts ...................................................................... 4

SUMMARY OF THE ARGUMENT .......................................................... 12

APPLICABLE STANDARD OF REVIEW ................................................... 13

ARGUMENT ...................................................................................... 15

I.     Summary Judgment was Appropriate on Roe's Negligence and Gross Negligence Claims Against Dr. Patterson ................................. 15

      A.    The district court's evidentiary rulings on hearsay statements offered by Roe were proper and are not a basis for reversal. ................................................. 15

      B.    The district court should have sustained additional hearsay objections asserted by Dr. Patterson ...................... 19

      C.    Roe cannot support the existence of a legal duty owed by Dr. Patterson ............................................... 20

      1.    The alleged assaults were not foreseeable ...................... 22

      2.    Applying the *Phillips* factors, no legal duty is warranted in these circumstance ...................................................... 26

D.    Minor and explainable conflicts in testimony unrelated to an ultimate fact issue are not a basis for reversal ................................................27

E.    Summary judgment is supported by lack of proximate cause ......................................................28

F.    Dismissal of Roe's gross negligence claims was warranted................................................30

II.    Summary Judgment was Appropriate on Roe's Defamation Claims Against Dr. Patterson ................................................31

A.    Dr. Patterson did not personally defame Roe......................31

1.    Statements to Professor Ennis were not defamatory.......................................................31

2.    Dr. Patterson did not make the May Board meeting statements relied on by Roe...........................34

B.    Dr. Patterson is not vicariously liable for alleged defamatory statements of others ...........................................34

1.    Time-barred claims against Dr. Patterson's alleged agents, who were never sued, cannot relate back in time, and the agents' limitations defense applies equally to Dr. Patterson................................35

2.    The Publications did not occur within the scope of an agency relationship on behalf of Dr. Patterson.....39

a)    The Untold Truth and Loveless Letter were    not authorized by Dr. Patterson ...................................................................40

b)    The Release of Facts was not published on behalf of Dr. Patterson or otherwise within    an agency relationship ...............................42

3.    Roe's vicarious liability defamation claims based on the Board meeting were waived and concern non-actionable allegations.............................................45

4. **Roe's claim that The Untold Truth was extrinsically defamatory was waived and lacks merit** .....................**47**

5. **The absence of pleadings and evidence of defamation per se and special damages justifies summary judgment pertaining to the Release of Facts** ............................................................**49**

C. **Dr. Patterson did not ratify a defamatory statement** ...........**50**

CONCLUSION...........................................................................................**54**

CERTIFICATE OF SERVICE .......................................................................**55**

CERTIFICATE OF COMPLIANCE .................................................................**55**

# TABLE OF AUTHORITIES

## Cases

*Alexandria v. Collier*, No. 21-50022, 2022 WL 3971294 (5th Cir. Aug. 31, 2022) ................................................................................................. 14, 35

*Ameen v. Merck & Co., Inc.*, 226 Fed. Appx. 363 (5th Cir. 2007).................. 34, 50

*Anderson v. United States*, 364 Fed. Appx. 920 (5th Cir. 2010)............................47

*Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473 (5th Cir. 2008) ........................13

*Banctexas Allen Parkway v. Allied Am. Bank*, 694 S.W.2d 179 (Tex. App.—Houston [14th Dist.] 1985, no writ)........................................................56

*Barrett v. Detroit Heading, LLC*, 311 Fed. Appx. 779 (6th Cir. 2009)....................4

*Barton v. Whataburger, Inc.*, 276 S.W.3d 456 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)............................................................................26

*Blackwell v. Ship Channel Dev. Co.*, 264 S.W. 223 (Tex. Civ. App.—Beaumont 1924, writ dism'd w.o.j.)................................................. 48, 49

*Bos v. Smith*, 556 S.W.3d 293 (Tex. 2018)...............................................................25

*Boyett v. Redland Ins. Co.*, 741 F.3d 604 (5th Cir. 2014) .......................................13

*BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189 (Tex. 2021), *reh'g denied* (Oct. 15, 2021)...............................................................................55

*Bradt v. West*, 892 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ................................................................................................. 45, 46

*Cameron Compress Co. v. Kubecka*, 283 S.W. 285 (Tex. Civ. App.—Austin 1926, writ ref'd)..............................................................................38

*City of Dallas v. Patrick*, 347 S.W.3d 452 (Tex. App.—Dallas 2011, no pet.)........32

*Clements v. Conard*, 21 S.W.3d 514 (Tex. App.—Amarillo 2000, pet. denied)38, 39

*Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671 (Tex. 2017)42, 43

*Colony Creek, Ltd. v. Resolution Tr. Corp.*, 941 F.2d 1323 (5th Cir. 1991)...........14

*D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429 (Tex. 2017) .......... 51, 53

*Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 2018)............... 51, 52

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ........................................ 29, 30

*DeWitt v. Harris Cnty.*, 904 S.W.2d 650 (Tex. 1995)...............................................37

*Diaz v. Rankin,* 777 S.W.2d 496 (Tex. App.—Corpus Christi 1989, no writ)........35

*Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435 (6th Cir. 2019)............4

*Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995) 20, 23, 25, 31, 32

*Doe v. Tonti Mgmt. Co., L.L.C.*, No. CV 20-2466, 2021 WL 5508874 (E.D. La. Mar. 1, 2021)................................................................................................49

*Draughon v. Johnson*, 631 S.W.3d 81 (Tex. 2021), *reh'g denied* (Sept. 24, 2021) 38

*EEOC v. Manville Sales Corp.*, 27 F.3d 1089 (5th Cir. 1994) ...............................15

*El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex. 1987)...........................................23

*Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137 (Tex. 2022) ................... 21, 22

*El-Khoury v. Kheir*, 241 S.W.3d 82 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)................................................................................................54

*Enercor, Inc. v. Pennzoil Gas Mktg. Co.*, No. 01-98-01026-CV, 2001 WL 754773 (Tex. App.—Houston [1st Dist.] July 5, 2001, pet. denied) (not designated for publication) ...............................................................................................46

*Evans v. McKay*, 212 S.W. 680 (Tex. Civ. App.—Dallas 1919, writ dism'd w.o.j.) ........................................................................................... 55, 56, 58

*Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572 (Tex. 2017) ........................ 36, 50

*Fields v. Moore*, 953 S.W.2d 523 (Tex. App.—Texarkana 1997, no pet.) .............24

*First Assembly of God, Inc. v. Tex. Utilities Elec. Co.*, 52 S.W.3d 482 (Tex. App.—Dallas 2001, no pet.) ...............................................................................33

*First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466 (Tex. 2004).............43

*Frith v. Fairview Baptist Church*, No. 05-01-01605-CV, 2002 WL 1565664 (Tex. App.—Dallas July 17, 2002, pet. denied) (not designated for publication).......26

*Gaines v. Kelly*, 235 S.W.3d 179 (Tex. 2007)........................................................42

*Garcia v. Pfizer, Inc.*, 268 Fed. Appx. 270 (5th Cir. 2008)....................................13

*Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797 (Tex. App.—Amarillo 2004, pet. denied) ...............................................................................47

*Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690 (Tex. 1986)...............................46

*Gezu v. Charter Commc'ns*, 17 F.4th 547 (5th Cir. 2021).......................................14

*Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287 (Tex. 1996)................................................................................................28

*Graff v. Beard*, 858 S.W.2d 918 (Tex. 1993) ........................................... 21

*Graham v. McCord,* 384 S.W.2d 897 (Tex. Civ. App.—San Antonio 1964, no writ) ........................................................................................................ 45

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990) .......... 23, 26

*Gregory v. Chohan*, 670 S.W.3d 546 (Tex. 2023) ................................... 54

*Grissom v. Watson*, 704 S.W.2d 325 (Tex. 1986) .................................... 42

*GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999) .............................. 47

*Harper v. McAndrews*, No. 20-40754, 2023 WL 4763346 (5th Cir. July 26, 2023) ........................................................................................................ 19

*Harris v. Mastec N. Am., Inc.*, No. 05-19-00955-CV, 2020 WL 6305028 (Tex. App.—Dallas Oct. 28, 2020, no pet.) .................................................. 47

*Harvey v. Preload, L.L.C.*, No. 23-30120, 2023 WL 6442598 (5th Cir. Oct. 3, 2023) ....................................................................................................... 30

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) ................................. 14

*Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017) ...................... 28

*Hester Int'l Corp. v. Fed. Republic of Nig.,* 879 F.2d 170 (5th Cir. 1989) .............. 42

*Hinojosa v. Butler*, 547 F.3d 285 (5th Cir. 2008) ................................... 15

*Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580 (Tex. 2023) .. 21, 22

*Houston Lighting & Power Co. v. Brooks*, 336 S.W.2d 603 (Tex. 1960) .............. 27

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476 (5th Cir. 2021) ...... 15

*Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir. 1979) ....................................... 18

*Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170 (Tex. 2004) ................... 22

*Idaho v. Wright*, 497 U.S. 805 (1990) ........................................................ 18

*In re Lipsky*, 411 S.W.3d 530 (Tex. App.—Fort Worth 2013, no pet.) ............. 43, 53

*IRA Res., Inc. v. Griego*, 221 S.W.3d 592 (Tex. 2007) ............................ 43

*ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147 (Tex. App.—El Paso 1996, writ denied) ............................................................................................. 47

*J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38 (Tex. App.—Houston [1st Dist.] 1990, no writ) .............................................................................. 54

*James v. Woods*, 899 F.3d 404 (5th Cir. 2018) .................................... 3, 53

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) ....................... 37

*John v. Louisiana (Bd. of Trustees),* 757 F.2d 698 (5th Cir.1985)..........................15

*Jones v. Tex. A&M Univ.*, No. CV H-18-1434, 2020 WL 4013143 (S.D. Tex. Feb. 26, 2020), report and recommendation adopted, No. CV H-18-1434, 2020 WL 1698907 (S.D. Tex. Apr. 8, 2020) ......................................................41

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332 (5th Cir. 2005) ..................... 14, 15

*Kinash v. Callahan*, 129 F.3d 736 (5th Cir. 1997) .........................................35

*Klocke v. Watson*, 2023 WL 2823060 (5th Cir. Apr. 7, 2023)................... 17, 18, 19

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) ........................................40

*Lab. Corp. Of Am. v. Compton*, 126 S.W.3d 196 (Tex. App.—San Antonio 2003, pet. denied)................................................................................ 38, 39

*Langston v. Eagle Pub. Co.*, 719 S.W.2d 612 (Tex. App.—Waco 1986, writ ref'd n.r.e.) ..........................................................................................39

*Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567 (Tex. 1972)................47

*Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987) ..... 14, 27

*Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)................................................................53

*Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2022 WL 4715725 (W.D. Tex. Sept. 30, 2022) ......................................................................................28

*Mars, Inc. v. Gonzalez*, 71 S.W.3d 434 (Tex. App.—Waco 2002, pet. denied).......48

*Martinez v. Hardy*, 864 S.W.2d 767 (Tex. App.—Houston [14th Dist.] 1993, no writ)..........................................................................................39

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......14

*Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595 (5th Cir. 2021) ..........................43

*McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901 (Tex. 1980) ......................31

*McCowan v. Software Spectrum, Inc.*, No. 08-00-00077-CV, 2002 WL 505138 (Tex. App.—El Paso Apr. 4, 2002, no pet.) (not designated for publication) ...46

*McFaul v. Valenzuela*, 684 F.3d 564 (5th Cir. 2012)............................................14

*McMurrey Corp. v. Yawn*, 143 S.W.2d 664 (Tex. Civ. App.—Texarkana 1940, writ ref'd) ..........................................................................................38

*Meener v. Lynd Co.*, No. 05-17-00518-CV, 2018 WL 718553 (Tex. App.—Dallas Feb. 6, 2018, pet. denied)...................................................................33

*Memon v. Shaikh*, 401 S.W.3d 407 (Tex. App.—Houston [14th Dist.] 2013), judgment withdrawn, No. 14-12-00015-CV, 2014 WL 6679562 (Tex. App.—Houston [14th Dist.] Nov. 25, 2014, no pet.) ......................................................53

*Miller v. Diaz*, No. 05-21-00658-CV, 2022 WL 109363 (Tex. App.—Dallas Jan. 12, 2022, no pet.) ........................................................................................37

*Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573 (Tex. 2002) ...................47

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007) ....................31

*Moore & Associates v. Metro. Life Ins. Co.*, 604 S.W.2d 487 (Tex. Civ. App.—Dallas 1980, no writ) ........................................................................................39

*NationsBank, N.A. v. Dilling*, 922 S.W.2d 950 (Tex. 1996) ...................................42

*Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) ...................................................40

*New York Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir.1996) ...............................15

*Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499 (Tex. 2017).................. 21, 22, 28

*Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex. 1995).........................................54

*Phan Son Van v. Pena*, 990 S.W.2d 751 (Tex. 1999)..............................................23

*Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 896 S.W.2d 156 (Tex. 1995) ............................................................................................................31

*Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640 (Tex. 1995) .. 34, 35, 36, 50

*Randell v. Galbreath*, No. 11-15-00056-CV, 2017 WL 2698113 (Tex. App.—Eastland June 22, 2017, no pet.) ...........................................................................46

*Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281 (5th Cir. 2020)...................................15

Rourke v. Garza, 530 S.W.2d 794 (Tex. 1975) .......................................................42

*Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).........54

*Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d 410 (Tex. App.—Corpus Christi 1988, no writ)........................................................................................................39

*Sanders-Burns v. City Of Plano*, 594 F.3d 366 (5th Cir. 2010) .............................41

*Sauceda v. City of San Benito, Tex.*, 78 F.4th 174 (5th Cir. 2023)........................15

*Scott v. Christian Methodist Episcopal Church*, No. 02-10-00434-CV, 2012 WL 42991 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) .......................................24

*Stanfield v. Neubaum*, 494 S.W.3d 90 (Tex. 2016) .................................................25

*Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471 (Tex. 1995).......................................58

*Stolinas v. Palmer*, 512 F. Supp. 3d 1264 (M.D. Fla. 2021), *appeal dismissed*, 2021 WL 1977168 (11th Cir. Mar. 3, 2021)..................................................19

*Strad Energy Services USA, Ltd. v. Bernal*, No. 04-16-00116-CV, 2016 WL 6242839  (Tex. App.—San Antonio Oct. 26, 2016, pet. denied).....................46

*Superior Derrick Services, L.L.C. v. LONESTAR 203*, 547 Fed. Appx. 432 (5th Cir. 2013) ................................................................................ 15, 35, 56

*Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835 (Tex. App.—Dallas 2014, no pet.) ...........................................................43

*Sw. Bell Tel. Co. v. Wilson*, 768 S.W.2d 755 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied) .................................................... 46, 47, 56

Taylor v. Louis, 349 S.W.3d 729 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ................................................................................................25

*Templet v. HydroChem Inc.,* 367 F.3d 473 (5th Cir. 2004).....................13

*Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30 (Tex. 2002) ............ 23, 27

*Thomas v. Great Atl. & Pac. Tea Co.,* 233 F.3d 326 (5th Cir. 2000)............... 29, 30

*Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005)................................................21

*U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, 761 F.3d 409 (5th Cir. 2014) ..........................................................................................49

*United States v. Davis*, 609 F.3d 663 (5th Cir. 2010).................................3

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), as revised (Dec. 27, 2011) ......................................................................................17

*United States v. Ismoila*, 100 F.3d 380 (5th Cir. 1996).........................17

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000).........................19

*United States v. Walker*, 410 F.3d 754 (5th Cir. 2005) ..........................19

*William Marsh Rice Univ. v. Thomas*, No. 01-14-00908-CV, 2015 WL 3522915 (Tex. App.—Houston [1st Dist.] June 4, 2015, no pet.) .....................38

*Williams v. N. Am. Van Lines of Tex., Inc.*, 731 F.3d 367 (5th Cir. 2013).............13

*Williams v. United Pentecostal Church Intern.*, 115 S.W.3d 612 (Tex. App.—Beaumont 2003, no pet.).................................................................27

*Winzer v. Kaufman Cnty.*, 916 S.W.3d 464 (5th Cir. 2019)................... 40, 41

*Wise v. Pena*, 552 S.W.2d 196 (Tex. App.—Corpus Christi–Edinburg 1977, writ dism'd)...........................................................................................55

*X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406 (5th Cir. 2013).......................3

## Rules

Fed. R. Civ. P. 15 ............................................................................ 39, 40

Fed. R. Civ. P. 56(c), (e) ...........................................................................14

Fed. R. Civ. P. 61 ......................................................................................15

## Statutes

Tex. Civ. Prac. & Rem. Code Ann. § 16.002 .............................................39

## Secondary Sources

3 EDWARD SHERMAN & MARY P. SQUIERS, MOORE'S FEDERAL PRACTICE-CIVIL
    15.19[3][d] (2009) ...............................................................................41

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Did Roe waive arguments that Dr. Patterson is vicariously liable for and
    adopted or ratified defamation of others by not addressing them in her
    Statement of Issues?

2.  Did the district court correctly sustain objections to self-serving and
    unsupported hearsay contained in Roe's Declaration prepared in response
    to summary judgment, by determining that the residual hearsay exception
    did not apply?

3.  If not moot, should Dr. Patterson's additional objections to hearsay
    statements in Roe's Declaration have been sustained?

4.  Did the district court correctly grant summary judgment on Roe's
    negligence and gross negligence claims against Dr. Patterson, individually,
    based on lack of a legal duty and proximate cause, when: (a) Dr. Patterson
    was not aware of any facts indicating the sexual assaults would occur; (b)
    the alleged assailant's past contained no conduct related to sexual assault:
    (c) no act or omission by Dr. Patterson led to the assaults being a natural
    and probable result; and (d) Roe's cites to minor conflicts in testimony do
    not relate to an ultimate fact issue?

5.  Whether the district court's summary judgment on Roe's defamation
    claims against Dr. Patterson is supported on the bases that: (a) Roe

provided no evidence of a defamatory statement personally communicated by Dr. Patterson; (b) like immunity for the statute of limitations defenses of Dr. Patterson's alleged agents applies, when claims against those agents do not relate back to the filing of Roe's Original Complaint; (c) vicarious liability for the alleged intentional torts of others is without evidence of agency relationships and/or acts within the scope of an agency relationship; (d) statements by Dr. Patterson's attorney, not argued until Roe's Sur-Reply, were waived and without identification of a defamatory statement; (e) Roe's extrinsic defamation arguments based on The Untold Truth were waived and without evidence of a defamatory gist concerning Roe; (f) defamation liability for the Release of Facts is not supported by evidence of damages, when Roe has not properly alleged or established defamation per se; and (g) Roe cannot support the elements of her ratification claim through tangential arguments such as silence, gratitude, and personal correspondence not publicly revealed.

<u>S</u><u>TATEMENT OF THE</u> <u>C</u><u>ASE</u>

## I.     <u>Procedural History</u>

Roe accurately identifies the procedural history of this case with the exception of one matter. Roe asserted a gross negligence claim, which the district court dismissed after granting Appellees' motions for summary judgment.[1]

## II.     <u>Rulings Presented for Review</u>

In her Statement of the Case, Roe did not identify the rulings presented for review. Giving deference to Roe's Brief, Roe has abandoned and/or waived several rulings and issues and simply seeks reversal of a portion of the district court's orders granting summary on her claims for negligence and gross negligence and defamation.

An appellant abandons an issue when she fails to brief the issue or reasonably comply with the requirements of Federal Rule of Appellate Procedure 28.[2] In her Brief, Roe has neither complied with the standards in Rule 28 nor offered sufficient briefing regarding the district court's orders on Dr. Patterson's Motion for Judgment on the Pleadings,[3] the Motion to Strike Undisclosed Witness Testimony or Alternatively Motion for Continuance,[4] or the Motion for Leave to Supplement

---

[1] *See* ROA.1501, 2404-43, 6003-18, 6410-39.

[2] *James v. Woods*, 899 F.3d 404, 411 (5th Cir. 2018); *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 411 n. 3 (5th Cir. 2013); *United States v. Davis*, 609 F.3d 663, 698 (5th Cir. 2010) (mere single paragraph reference to unsuccessful motion in district court waived issue).

[3] ROA.1435-65.

[4] ROA 2297-2315.

Plaintiff's Response to Defendant Leighton Paige Patterson's Motion for Partial Summary Judgment on Defamation.[5] As such, these issues have been waived.

In addition, the following issues were not identified by Roe as presented for review: (1) whether Dr. Patterson can be vicariously liable for defamation based on acts of his purported agents; and (2) whether Dr. Patterson adopted or ratified the defamatory statement of a third-party. The Sixth Circuit has applied the mandatory requirements of Rule 28 in holding that issues not addressed in an appellant's statement of issues are waived.[6] This standard should be adopted and applied here.

## III.  <u>Relevant Facts</u>

Dr. Paige Patterson is a well-known leader in the Southern Baptist Convention[7] and was the President of Southwestern Baptist Theological Seminary ("SWBTS") from 2003 to May 2018.[8] While President, John Doe was accepted as a student into the Seminary.[9] Dr. Patterson was not involved in Doe's application process and had no knowledge of him at that time.[10] Importantly, Dr. Patterson did not meet with Doe until years later, after Roe disclosed her allegations of sexual assault.[11]

---

[5] ROA.2473-77.
[6] *See Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 449 (6th Cir. 2019); *Barrett v. Detroit Heading, LLC*, 311 Fed. Appx. 779, 796 (6th Cir. 2009).
[7] ROA.1479.
[8] ROA.6140.
[9] ROA.6024-25.
[10] ROA.6049, 6058-59.
[11] ROA.6058-59.

While attending SWBTS, Doe met Roe and expressed interest in dating her.[12] Roe, who was twenty-eight years old at the time, responded that Doe should call her mother regarding his interest, which she had requested other men do on previous occasions.[13] When Doe called Roe's mother, Roe's mother instructed him to "go through some conferences" and "memorize 20 verses of Psalm 119" in order to determine his interest in dating her daughter.[14] Around the same time, Doe also began leaving notes on the windshield of Roe's car further expressing his interested in dating her.[15] During the five day period where Doe left notes on Roe's windshield, phone records reflect fifteen calls between Doe and Roe and over forty minutes where the phone lines were connected.[16]

While these interactions occurred, Roe's mother expressed to her family friend, Lennie Knight, that someone was romantically interested in Roe but that the interest was not reciprocated.[17] Based on this conversation, Mrs. Knight did not believe that Doe was dangerous or a threat to Roe.[18] Through the conversation between Mrs. Knight and Roe's mother, Dr. Richard Knight, Mrs. Knight's husband, also became aware of Doe's interest in Roe and the notes left on Roe' windshield.[19]

---

[12] ROA.6068-6072.
[13] ROA.6069-6072.
[14] ROA.6097-98.
[15] ROA.6072.
[16] ROA.6081-82, 6144-77.
[17] ROA.6116-18.
[18] ROA.6117-18.
[19] ROA.6127-28.

Notably, neither Dr. Knight nor Mrs. Knight disclosed the conversation with Roe's mother or made mention of Doe to Dr. Patterson until after Roe's allegations of sexual assault were disclosed.[20] Similarly, Roe herself did not mention the notes left on her windshield to Dr. Patterson until after she made these allegations.[21]

The month after Doe's interest in Roe began – before the first time that Roe alleges she gave in to Doe's requests to spend time together – Doe and Roe met Doe's family, and Doe's father observed them to be in a boyfriend-girlfriend relationship.[22] The couple went to dinner with Doe's family, and, afterwards, Roe invited Doe's family back to her home.[23] Roe claims that the following day, in attending a barbecue where she alleges the first assault occurred, was the first time she spent substantial time with Doe.[24]

In the following months, Doe and Roe continued to speak with Doe's father by phone on a number of occasions.[25] Their extensive conversations with each other also continued.[26] From September 13, 2014 through November 30, 2014, there were one hundred and thirty-one calls between Doe and Roe and over seven hundred and seventy-five minutes where the phone lines were connected.[27]

---

[20] ROA.6119, 6129-32, 6140.
[21] ROA.6076-77.
[22] ROA.6181-86.
[23] ROA.6181-86.
[24] ROA.8449.
[25] ROA.6187-90.
[26] ROA.6081-82, 6144-77.
[27] ROA.6081-82, 6144-77.

During the same time, Pastor Kyle Walker observed Doe and Roe in what appeared to be a romantic relationship, as exhibited by their hand holding, intimate conversations, having their arms around each other, and being in close facial proximity as if they had just kissed.[28] John Nichols, SWBTS' Director of Security, also observed Doe and Roe holding hands on campus and appearing to be a couple.[29] Throughout this time, Dr. Patterson was never informed and never became aware that Doe had acted inappropriately, may have been violent, or had possessed firearms on campus.[30] Doe was not permitted to possess firearms on campus without Dr. Patterson's approval.[31]

Then, on August 20, 2015 – *months after* Roe alleges Doe assaulted her for the last time – Roe reported to Dr. Patterson that Doe had sexually assaulted her and that he improperly possessed firearms on campus; this was the first time Roe disclosed these allegations to Dr. Patterson. [32] In response, the Fort Worth police were contacted and Doe was quickly expelled from SWBTS based on his possession of firearms.[33] When Doe became aware of Roe's assault allegations, he met with Dean Nichols, SWBTS' Chaplain, and showed him a photograph on his phone of

---

[28] ROA.6037-39, 6041-45.
[29] ROA.6195-96.
[30] ROA.6140.
[31] ROA.8828-30.
[32] ROA. 6078-80, 6083-84, 6140, 6214-16.
[33] ROA.6255-56, 10027-29.

Roe taking a selfie while posing naked and smiling.[34] Roe was not in distress in the photograph.[35]

As part of an investigation into Roe's threatened litigation against SWBTS, Dr. Patterson obtained documents from SWBTS Professor Patricia Ennis.[36] At this time, Dr. Patterson informed Professor Ennis of Doe's expulsion from school for possessing firearms and that Doe's response to Roe's allegations was that he was in possession of "compromised pictures of [Roe]."[37]

Years later, in 2018, Dr. Patterson was subjected to public attacks on his character.[38] These attacks culminated in a SWBTS Board of Trustees meeting on May 22, 2018, where handling of Roe's allegations were discussed.[39] Shelby Sharpe spoke concerning these allegations.[40] During the discussion, he cursorily referenced photos related to the claim.[41] Based on additional information discussed in this meeting, the Board affirmed that Dr. Patterson handled Roe's allegations of assault properly but changed his status to President Emeritus based on other grounds.[42] These events were reported on by publications such as the Fort Worth Star Telegram,

---

[34] ROA.6204-08.
[35] ROA.6206-08.
[36] ROA.9650-52.
[37] ROA.9650-52.
[38] ROA.1479, 1492, 9253-54.
[39] ROA.1492
[40] ROA.7911.
[41] ROA.7911.
[42] ROA.1492, 6257-58.

which publicly discussed Roe's assault allegations.[43] Following this additional media attention, an executive Board meeting was held while Dr. Patterson was out of the country, and, as a result, Dr. Patterson was removed from all roles with SWBTS.[44] Online publications regarding Dr. Patterson's termination followed.[45]

"The Untold Truth" was an article solely written by Sharayah Colter and Candi Finch.[46]  Dr. Patterson did not participate in drafting the publication, provide information contained in the publication, or communicate with the authors regarding the article prior to its publication.[47] Dr. Patterson also did not direct that the publication be drafted or published.[48] After his termination from SWBTS, and while the article was being written, Dr. Patterson was in Germany where access to his phone and email had been disconnected by SWBTS.[49] Neither Mrs. Colter nor Dr. Finch were employed by Dr. Patterson or authorized by Dr. Patterson to publish an article in his defense.[50]  In fact, both Mrs. Colter and Dr. Finch knew that Dr. Patterson would not want such a statement to be made and published the statement

---

[43] ROA.9682-88.
[44] ROA.1492, 6283.
[45] ROA.1493-95.
[46] ROA.6305-07, 6323-26.
[47] ROA. 6283, 6301-07, 6323-26.
[48] ROA.6308-09, 6312-13, 6323-26.
[49] ROA.6283.
[50] ROA.6283.

anyways.[51] Dr. Patterson's first knowledge of the publication came after it was published.[52]

The "Release of Facts" was solely drafted and edited by Shelby Sharpe with the aid of his assistant.[53] Mr. Sharpe did not rely on information from Dr. Patterson in drafting the Release, and Dr. Patterson was in no way involved in its publication.[54] As Dr. Patterson's attorney, Mr. Sharpe had authority to relay Dr. Patterson's personal statements only when approved to do so.[55] He published the Release of Facts without Dr. Patterson's approval and in his individual capacity.[56] He did so knowing that Dr. Patterson would oppose such a statement being made.[57] Dr. Patterson did not become aware of the publication until after it was published.[58]

The "Loveless Letter" was authored and published by Gary Loveless and Susan Oliver Pearson.[59] Dr. Patterson did not employ the individuals involved in the Letter, authorize or direct those individuals to make a statement on his behalf, or represent to others that those individuals had such authority.[60] Prior to the Letter being published, Dr. Patterson had no communications with these individuals

---

[51] ROA.6310-12, 6321-22, 6325-26.
[52] ROA.6389-90, 6401.
[53] ROA.6268, 6270, 6273-74.
[54] ROA.6268, 6270, 6273-74, 6284.
[55] ROA.6284.
[56] ROA.6266-68, 6270, 6273-74.
[57] ROA.6275.
[58] ROA.6391-92.
[59] ROA.6336-40, 6356-57.
[60] ROA.6283, 6343-45, 6369-71.

regarding the Letter and provided no information on which the Letter relied.[61] Further, he did not even see the Letter until after it was published.[62]

Dr. Patterson himself has not published The Untold Truth, the Release of Facts, or the Loveless Letter (collectively, the "Publications") or any of the specific defamatory statements alleged by Roe.[63]

---

[61] ROA.6284, 6336-45, 6356-60, 6368, 6378-81.
[62] ROA.6393.
[63] ROA.6283.

## SUMMARY OF THE ARGUMENT

Roe attacks every aspect of the district court granting summary judgment on her negligence, gross negligence, and defamation claims against Dr. Patterson. However, her unspecific and immaterial citations to evidence and cited conflicts in testimony years after events occurred and unrelated to the merits of her case do not create a *genuine* issue of material fact. Nor do they support the contention that the district court applied the wrong summary judgment standard. Rather than focus on the merits of this case, Roe continues her ad hominem attacks on Dr. Patterson's character through the "break her down" email, which has been repeatedly misrepresented in the public and by Roe. She also relies on the residual hearsay exception to characterize unsupported, self-serving hearsay allegations as summary judgment evidence. These efforts should not be rewarded and are not a basis for reversal of the district court's decisions.

Summary judgment on Roe's negligence and gross negligence claims was proper because there was no information available to Dr. Patterson that may have indicated that Doe may commit assault. Further, any evidence concerning Doe was not predictive that he was likely to assault Roe. Assuming the assaults did occur, they were not foreseeable, Dr. Patterson owed no legal duty, and proximate cause cannot be established.

Summary judgment on Roe's defamation claims was similarly warranted, since there is no evidence that Dr. Patterson personally defamed Roe, was vicariously liable for the alleged defamation by others, or ratified a defamatory statement. In addition, these claims against Dr. Patterson were time-barred based on the doctrine of like immunity.

## <u>APPLICABLE STANDARD OF REVIEW</u>

The Fifth Circuit reviews grants of summary judgment *de novo*.[64] Review is "not limited to the district court's reasons for its grant of summary judgment" and may be affirmed "on any ground raised below and supported by the record."[65] "Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial."[66]

In opposing summary judgment, a non-moving party must show a "'genuine'" issue of fact.[67] This requires more than "some metaphysical doubt as to the material facts."[68] "Summary judgment may not be thwarted by conclusional allegations,

---

[64] *Williams v. N. Am. Van Lines of Tex., Inc.*, 731 F.3d 367, 368–69 (5th Cir. 2013) (citing *Templet v. HydroChem Inc.,* 367 F.3d 473, 477 (5th Cir. 2004)).

[65] *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 606–07 (5th Cir. 2014) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008)) (internal quotation marks omitted).

[66] *Garcia v. Pfizer, Inc.*, 268 Fed. Appx. 270, 272 (5th Cir. 2008).

[67] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

[68] *Id.*

unsupported assertions, or presentation of only a scintilla of evidence."[69] Further, unspecific or immaterial evidence may be properly discounted.[70]

"It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court."[71] "A party forfeits an argument by failing to raise it in the first instance in the district court,"[72] and an Roe "cannot attack summary judgment on appeal by raising distinct issues that were not before the district court."[73] "To preserve an argument for appeal, the party 'must press and not merely intimate the argument during the proceedings before the district court.'"[74] "An argument must be raised 'to such a degree that the district court has an opportunity to rule on it.'"[75]

With respect to evidentiary rulings, the standard is abuse of discretion.[76] Even where error is present, an order granting summary judgment may be reversed only

---

[69] *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

[70] *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

[71] *Alexandria v. Collier*, No. 21-50022, 2022 WL 3971294, at *1 (5th Cir. Aug. 31, 2022) (quoting *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005)) (internal quotation marks omitted).

[72] *Id.* (quoting *Gezu v. Charter Commc'ns*, 17 F.4th 547, 555 (5th Cir. 2021)) (internal quotation marks omitted).

[73] *Colony Creek, Ltd. v. Resolution Tr. Corp.*, 941 F.2d 1323, 1326 (5th Cir. 1991) (quoting *John v. Louisiana (Bd. of Trustees)*, 757 F.2d 698, 710 (5th Cir.1985)) (internal quotation marks omitted). *See also Superior Derrick Services, L.L.C. v. LONESTAR 203*, 547 Fed. Appx. 432, 438 (5th Cir. 2013) (holding factual arguments not raised in district court were waived).

[74] *Keelan*, 407 F.3d at 339–40 (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n. 4 (5th Cir.1996)).

[75] *Id.* (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d at 141 n. 4).

[76] *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 489 (5th Cir. 2021) (citing *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1092–93 (5th Cir. 1994)).

if the error affects a "party's substantial rights."[77] "The party asserting error bears the burden of proving such prejudice."[78]

**ARGUMENT**

## I.     Summary Judgment was Appropriate on Roe's Negligence and Gross Negligence Claims Against Dr. Patterson

The district court granted in part Appellees' objections to Roe's summary judgment evidence and granted Appellees' motions for partial summary judgment concerning Roe's negligence and gross negligence claims.[79] On appeal, Roe attacks the district court's evidentiary rulings and dismissal of her negligence and gross negligence claims. Because the district court's rulings were appropriate, and since additional objections asserted by Dr. Patterson should have been granted, the district court's decision should be affirmed.

### A.     The district court's evidentiary rulings on hearsay statements offered by Roe were proper and are not a basis for reversal.

Roe complains that the district court erred by failing to consider hearsay statements under the residual hearsay exception. Roe is correct that Rule 807 no longer contains an equivalence standard. Roe is wrong that this alters the propriety of the district court's evidentiary decision or granting of summary judgment.

---

[77] Fed. R. Civ. P. 61; *Sauceda v. City of San Benito, Tex.*, 78 F.4th 174, 182 (5th Cir. 2023) (quoting *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 286 (5th Cir. 2020)); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th at 489 (quoting *Hinojosa v. Butler*, 547 F.3d 285, 291–92 (5th Cir. 2008)).

[78] *Sauceda*, 78 F.4th at 182 (quoting *Ratliff*, 948 F.3d at 286) (internal quotation marks omitted).

[79] ROA.2404-43.

Here, the district court cited to but did not apply the wrong standard on the residual hearsay exception. Based on the record before the court, the district court found *no* sufficient guarantees of trustworthiness supporting the hearsay statements.[80] Therefore, the equivalency standard was never assessed, and the district court's ruling was not an abuse of discretion.

Roe relies solely on her own seventeen-page declaration signed in July 2022 – when Appellees' motions for summary judgment were pending – as support that Doe disclosed a violent and criminal personal history that was also discussed with Dr. Patterson.[81] The district court was right to find that Roe's described hearsay was not sufficiently trustworthy, since the only support that these private conversations between Roe and Doe took place was Roe's Declaration opportunistically prepared after Doe's death. *United States v. El-Mezain*, 664 F.3d 467, 498 (5th Cir. 2011), as revised (Dec. 27, 2011) (quoting *United States v. Ismoila*, 100 F.3d 380, 393 (5th Cir. 1996) (internal brackets omitted) ("The determination of trustworthiness is 'drawn from the totality of the circumstances surrounding the making of the statement, but it cannot stem from other corroborating evidence.'"). Similar to this Court's holding in *Klocke v. Watson*, where notes made during the course of an investigation did not contain sufficient guarantees of trustworthiness, Roe's

---

[80] *See* ROA.2415-16.
[81] ROA.8446-62.

Declaration containing hearsay statements purportedly said by Doe is likewise self-serving, unsupported, and without sufficient guarantees of trustworthiness.[82]

Even if the district court had abused its discretion in the exclusion of this evidence, Roe's substantial rights were not affected, and Roe has failed to prove that prejudice has occurred.

First, the district court's decision is legally accurate, as the residual hearsay exception does not permit a plaintiff to construct litigiously favorable facts that cannot be contradicted due to the death of the only other individual alleged to have been present in a private conversation. In support of the residual hearsay exception, Roe relies on some facts regarding Doe being true and that corroborating evidence supports that Doe shared "dark issues" with Roe. Trustworthiness relies on facts in existence at the time the statement was made.[83] When the Declaration was made, Doe was deceased and could no longer respond to the alleged statements. Alleged statements that Doe had met with Dr. Patterson are also disputed, as Dr. Patterson never met with Doe at the time the alleged conversation occurred.[84] Roe offers no corroboration that either of these invented private conversations ever occurred.

---

[82] *See* 2023 WL 2823060, at *7 (5th Cir. Apr. 7, 2023).
[83] *Idaho v. Wright*, 497 U.S. 805, 820 (1990) (quoting *Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir. 1979)).
[84] ROA.6282.

Roe's knowledge of separate facts about Doe years after the fact or that discussions between her and Doe may have occurred does not change this analysis. Neither detail makes trustworthy that Doe made statements to Roe about specific portions of his past or a purported meeting with Dr. Patterson. Further, to the extent relevant, there is no corroboration that "dark issues" of Doe were ever discussed. Instead, the handwritten note cited by Roe discloses that *Roe's* "dark issues" surfaced after reading a book provided to her by Doe, not that Doe discussed any dark issues with Roe.[85] Similar to *Klocke*, cited above, and factually equivalent to the self-serving, uncorroborated, and after-the-fact statements in *Stolinas v. Palmer*, 512 F. Supp. 3d 1264, 1268 (M.D. Fla. 2021), *appeal dismissed*, 2021 WL 1977168 (11th Cir. Mar. 3, 2021), admission of hearsay statements of Doe described in Roe's Declaration years after the fact and in response to summary judgment motions, is not one of the rare and "truly exceptional cases" where the residual hearsay exception should be applied.[86]

Second, Roe has failed to show that she was prejudiced by the district court's ruling. Assuming for the sake of argument that Roe's concocted story about Doe describing his past sexual partners, abuse of drugs and alcohol, and extensive

---

[85] ROA.9750.

[86] *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005) (quoting *United States v. Phillips*, 219 F.3d 404, 419 (5th Cir. 2000)) (internal quotation marks omitted). *See also Harper v. McAndrews*, No. 20-40754, 2023 WL 4763346, at *1 n. 1 (5th Cir. July 26, 2023) (unpublished opinion applying "truly exceptional" standard).

criminal history to Dr. Patterson was admissible, these facts do not provide a scintilla of evidence that Doe committing violent sexual assault was foreseeable.[87] Without such prejudice, the district court's ruling on this issue is not a basis for reversal.

### B.     The district court should have sustained additional hearsay objections asserted by Dr. Patterson

Dr. Patterson specifically objected to paragraphs 18, 19, 30-36, and 43 of Roe's Declaration as containing hearsay and hearsay within hearsay.[88] The district court appears to have granted these objections only to the extent they related to Doe's alleged conversation with Dr. Patterson.[89] To the district court's credit, the remaining objections deal with alleged facts that were unknown to Dr. Patterson and, therefore, are irrelevant to the district court's foreseeability and legal duty analysis. However, to the extent this Court finds any of the objected to hearsay statements influential, they are inadmissible hearsay and not subject to the residual hearsay exception for the same reasons cited above. As such, if these statements have bearing in this appeal, the asserted objections should have been granted.

---

[87] *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (A criminal act is foreseeable if it should have been anticipated based on prior conduct of the person committing the act.).
[88] ROA.11362.
[89] ROA.2414.

### C.     Roe cannot support the existence of a legal duty owed by Dr. Patterson

"The existence of a legal duty, which is a prerequisite to all tort liability, is the threshold inquiry in a negligence case."[90] "Whether a legal duty exists under particular facts, and if so, the scope and elements of that duty, present questions of law that courts must decide."[91] When, as here, "a duty has not been recognized in particular circumstances, the question is whether one should be."[92] Importantly, individuals will not be held liable for allegations that conduct within their capacity as an employee of a company breached the *employer's* duty of care.[93] Therefore, for individual liability to exist, they must have a legal duty separate from the employer's duty of care.[94]

In evaluating the existence of a common law duty, "courts must weigh the 'social, economic, and political questions and their application to the facts at hand' to determine whether a duty exists and what it is."[95] "The considerations that bear on those matters include the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of

---

[90] *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 582–83 (Tex. 2023) (quoting *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993) and *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022)) (internal quotation marks omitted).

[91] *Id*. (citing *Kenyon*, 644 S.W.3d at 145).

[92] *Id*. (citing *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017)).

[93] *Tri v. J.T.T.*, 162 S.W.3d 552, 562–63 (Tex. 2005).

[94] *Id*.

[95] *Kenyon*, 644 S.W.3d at 145 (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004) and citing *Pagayon*, 536 S.W.3d at 506).

guarding against the injury, and the consequences of placing the burden on the defendant."[96] "Additional considerations include whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm."[97] Material facts relevant to the aforementioned factors may be viewed "in the light required by the procedural posture of the case."[98] It is the plaintiff's burden to establish the existence of a duty and, when foreseeability is disputed, the plaintiff also bears the burden of proof on this factor.[99]

Foreseeability is the "foremost and dominant consideration" in the duty analysis.[100] Before a duty can be imposed, "the risk of harm must be foreseeable"[101] and "there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim."[102] "Whether criminal activity was foreseeable in a particular instance requires 'more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury.'"[103]

---

[96] *Id*. (quoting *Humble Sand & Gravel*, 146 S.W.3d at 182) (internal quotation marks omitted).

[97] *Id*. (quoting *Humble Sand & Gravel*, 146 S.W.3d at 182) (internal quotation marks omitted).

[98] *Mendez*, 671 S.W.3d at 583.

[99] *Humble Sand & Gravel*, 146 S.W.3d at 182–83.

[100] *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002) (citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987)).

[101] *Id*.

[102] *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex. 1990).

[103] *Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999) (quoting *Doe*, 907 S.W.2d at 478).

### 1. The alleged assaults were not foreseeable

Roe argues that Roe's injuries were foreseeable "in light of the attending circumstances" without identifying any circumstances that would lead to someone anticipating that the assaults may occur.[104] Instead, she primarily relies on Doe's criminal history, leaving notes on Roe's car, and possession of guns.[105] However, Dr. Patterson had no knowledge of any of these facts.[106] He was not involved in Doe's admission to the Seminary and did not learn of Doe's gun possession or criminal past until after Roe's allegations were disclosed.[107] The only admissible facts are that Doe was not permitted to possess guns on campus and was expelled when it was discovered that he had done so.[108] As to Doe leaving notes on Roe's windshield, neither the Knights nor Roe provided this information to Dr. Patterson until after the assault allegations were reported.[109]

For information to have a bearing on foreseeability, it must first be available to the defendant.[110] Similar to the Church in *Scott*, which could not have known its Bishop had forcibly grabbed and pulled at the clothes of another individual while

---

[104] Brief for Plaintiff-Appellant, p. 22 (Doc. 41-1).
[105] Brief for Plaintiff-Appellant, p. 22 (Doc. 41-1).
[106] ROA.6140.
[107] ROA.6049, 6058-59, 6140.
[108] ROA.10027-29.
[109] ROA. 6076-77, 6119, 6129-32, 6140.
[110] *Scott v. Christian Methodist Episcopal Church*, No. 02-10-00434-CV, 2012 WL 42991, at *9 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.); *Fields v. Moore*, 953 S.W.2d 523, 525 (Tex. App.—Texarkana 1997, no pet.) (burglary of habitation not evaluated in foreseeability analysis, since individual defendant did not have knowledge of crime).

masturbating, since the victim never reported the incident, Dr. Patterson could not have known of information that Roe did not reveal to anyone prior to the alleged assaults.[111]

Further, the information cited by Roe was not indicative that Doe may commit sexual assault. An injury is foreseeable if "a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission."[112] "Foreseeability usually is determined by whether the defendant is aware of prior, similar conduct by third parties" and "is based on what is known at the time, not in hindsight."[113] The "prior conduct must be sufficiently similar to give the defendant notice of the general nature of the danger."[114] In addition, foreseeability requires that "the injury to the particular plaintiff or one similarly situated could be anticipated."[115]

The Texas Supreme Court addressed foreseeability when it found that "prior DWI convictions did not indicate criminal conduct in any way akin to sexual assault of young boys."[116] In an unpublished opinion, the Dallas Court of Appeals similarly

---

[111] While Roe did disclose the notes to her mother and the Knights, there is no evidence that this information was shared beyond this group of family friends.

[112] *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (quoting *Doe,* 907 S.W.2d at 478) (internal quotation marks omitted).

[113] *Bos v. Smith*, 556 S.W.3d 293, 303-04 (Tex. 2018) (quoting *Taylor v. Louis*, 349 S.W.3d 729, 737 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (internal quotation marks omitted).

[114] *Id.*

[115] *Id.*

[116] *Doe*, 907 S.W.2d at 478.

found "nothing in [the assailant's] background indicated that he might sexually assault a child" when the assailant had a criminal history that included "three felony convictions (two for burglary of a building and one for possession of a controlled substance) and five misdemeanors (public intoxication, possession of marijuana, unlawful carrying of a weapon, and two for evading arrest or detention)."[117] In this case, Roe's allegations are similarly devoid of any facts concerning Doe that would indicate conduct in any way akin to sexual assault: Doe's prior criminal history was non-violent and essentially concerned alcohol related offenses; his leaving notes on Roe's windshield contained no threats of violence against Roe; and Doe's possession of guns did not make it likely that he would participate in violent crimes.[118]

Throughout her Brief, Roe cites to other allegations, such as Doe's involvement in fights in the past, being involved in a suspicious student incident, and being placed on academic probation.[119] Again, the only evidence is that Dr. Patterson was not aware of this information at the time of the alleged assaults.[120] Additionally, none of these facts would tend to show that Doe may commit sexual

---

[117] *Frith v. Fairview Baptist Church*, No. 05-01-01605-CV, 2002 WL 1565664, at *4 (Tex. App.—Dallas July 17, 2002, pet. denied) (not designated for publication). *See also Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (prior convictions for dealing cocaine and felony nonpayment of child support did not make aggravated robbery leading to murder foreseeable).

[118] *See Phillips*, 801 S.W.2d at 526–27 (Cab drivers carrying guns did not create a foreseeable risk of gun-related injury when only one prior incident involving the use of a weapon had occurred).

[119] Brief for Plaintiff-Appellant, p. 30-32 (Doc. 41-1).

[120] ROA.6140.

assault. Roe also points to student concerns about Roe, neither of which concern potential exposure to assaultive conduct and neither of which are supported as having occurred prior to any of the alleged assaults. Despite Roe's protestations that the district court drew inferences against her, the unspecific and immaterial evidence largely relied upon by Roe does not create a genuine issue of fact and warrants disregard.[121]

Finally, Roe is critical of the "culture" at SWBTS. However, she fails to show any instances of sexual assault reported at SWBTS prior to her allegations. Nor is there any indication that sexual assault or related conduct was permitted to such a degree that all students, or Roe specifically, were somehow at an elevated risk of assault. More importantly, foreseeability is not assessed based on general knowledge that assault can occur.[122] Instead, it is based on whether it was foreseeable that the alleged assailant would commit assault.[123] Neither the alleged culture at SWBTS or anything else indicated that Doe may assault Roe.

---

[121] *Leonard*, 828 F.2d at 294.

[122] *Williams v. United Pentecostal Church Intern.*, 115 S.W.3d 612, 616 (Tex. App.—Beaumont 2003, no pet.) (general knowledge that sexual abuse may occur was not evidence that individual would commit abuse).

[123] *See id.*

Because foreseeability is required for a legal duty to exist,[124] and since there is no evidence that Doe's alleged sexual assaults were foreseeable, Roe has not fulfilled her burden to establish a duty owed by Dr. Patterson.

## 2.    Applying the *Phillips* factors, no legal duty is warranted in these circumstance

Even if some degree of foreseeability is considered, the *Phillips* factors support the non-existence of a legal duty in these circumstances. With respect to foreseeability, the risk in this case was much less than *Pagayon*, 536 S.W.3d at 507 (foreseeability of verbal altercations leading to fistfight was "small") and vastly distinguishable from the knowledge of prior similar incidents present in *Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2022 WL 4715725, at *5 (W.D. Tex. Sept. 30, 2022) (evidence existed that athletic director was aware of assault that preceded assaults at issue), *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 621 (W.D. Tex. 2017) (involving a sexual assault claim where athletic director and coach knew of football player's prior citation for misdemeanor sexual assault), and *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996) (Council knew of scoutmaster's inappropriate conduct with boys prior to scoutmaster sexually abusing child).

---

[124] *Peavy*, 89 S.W.3d at 36 ("There is neither a legal nor moral obligation to guard against that which cannot be foreseen") (quoting *Houston Lighting & Power Co. v. Brooks*, 336 S.W.2d 603, 606 (Tex. 1960)) (internal quotation marks omitted).

In addition, the conduct presented in this case does not evidence a substantial risk or likelihood of injury, and the consequences of expansive litigation and magnitude of the burden of a post-secondary President monitoring all student interactions for even the slightest concern is extreme. Further, any social utility to imposing a burden on a Seminary President in these circumstances would be small, since distinguishing between normal interactions between students and ones that may lead to assault would likely be impossible.

As a result, weighing the *Phillips* factors leads to the conclusion that a legal duty should not be imposed based on the facts alleged in this case.

### D.    Minor and explainable conflicts in testimony unrelated to an ultimate fact issue are not a basis for reversal

Roe alleges that questions of witnesses' credibility should be sufficient to defeat summary judgment. However, the standard Roe seeks to apply would require reversal of all summary judgments where "conclusional allegations that a witness lacks credibility" are made, which is a standard that has been refuted by this court.[125] Witness credibility can defeat summary judgment only on the rare occasions where there is "well-supported suspicion of mendacity . . . concerning the ultimate fact

---

[125] *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (quoting *Thomas v. Great Atl. & Pac. Tea Co.,* 233 F.3d 326, 331 (5th Cir. 2000)) (internal quotation marks omitted).

issue."[126] Unlike *Deville*[127] and *Thomas*,[128] which were each cited by Roe, any conflicting testimony in this case can best be attributed to confusion or inherent differences in recollection concerning events that, concerning Roe, occurred more than five years prior to any witness testimony in this case. More importantly, none of the conflicts in testimony, such as whether Dr. Patterson did nor did not discuss Roe's allegations with Doe after Roe's report, concern an ultimate fact issue. For these reasons, witness credibility is not a proper basis for overturning summary judgment.[129]

### E.    Summary judgment is supported by lack of proximate cause

The district court granted summary judgment for Dr. Patterson because he did not owe a legal duty without deciding whether Roe provided a scintilla of evidence in support of proximate cause. Assuming a legal duty does exist, which Dr. Patterson denies, proximate cause cannot be established, and summary judgment on negligence and gross negligence must be affirmed on these grounds.[130] "Proximate

---

[126] *Id.* (quoting *Thomas,* 233 F.3d at 331) (internal quotation marks omitted).

[127] 567 F.3d at 166 (Officer's testimony that probable caused for arrest existed based on speed of plaintiff's vehicle discredited by officer's problematic arrests, complaints against him, and history of falsifying other charges.).

[128] 233 F.3d at 331 (Drunk driver's own testimony and high blood alcohol level discredited her testimony, as an interested witness, and the affidavit of her husband that driver had not consumed beer purchased from defendant prior to accident.).

[129] *See Harvey v. Preload, L.L.C.*, No. 23-30120, 2023 WL 6442598, at *3 n. 2 (5th Cir. Oct. 3, 2023) (accepting witness credibility argument for purposes of unpublished decision but finding fact had no bearing on outcome of case).

[130] *See* ROA.6011-16 (In the district court, Dr. Patterson moved for summary judgment on Roe's negligence and gross negligence claims based on lack of proximate cause.).

cause requires the defendant's conduct to be both the cause in fact and the foreseeable cause of injury."[131] "These elements cannot be established by mere conjecture, guess, or speculation."[132]

As discussed above, the alleged assaults were not foreseeable, and this component of proximate cause cannot be established. Additionally, Roe failed to create a fact issue on whether the cause in fact element could be met.

"The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred."[133] "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible."[134] Instead, the negligence must go further than merely a remote cause and show that the injuries were "*the natural and probable result*" of the alleged conduct.[135] "In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause."[136]

---

[131] *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 582 (Tex. 2007).

[132] *Doe*, 907 S.W.2d at 477 (citing *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980)).

[133] *Id*. (quoting *Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)) (internal quotation marks omitted).

[134] *Id*.

[135] *Id*. (emphasis added).

[136] *Id*.

29

In this case, there is no indication that an act or omission by Dr. Patterson led to the *natural and probable* result of Roe's alleged sexual assaults. Dr. Patterson's mere role as President of the Seminary is too attenuated to establish cause in fact. Further, Dr. Patterson was not involved in Doe's admissions process and had no knowledge of Doe prior to Roe's allegations.[137] Plaintiff, an adult student, did not disclose her accusations against Doe to Dr. Patterson until after the alleged assaults had occurred.[138] On this record, even assuming Dr. Patterson owed some legal duty, his conduct related to that duty was not a cause in fact of Roe's alleged assaults.

### F.    Dismissal of Roe's gross negligence claims was warranted

The district court properly granted summary judgment on Roe's gross negligence cause of action against Dr. Patterson, since there was no genuine issue of material fact with respect to this claim.[139] Dismissal of this cause of action was also proper, because Roe's negligence claim was unsupported.[140] Roe does not cite to any authority that negates this well-established point of law.

---

[137] ROA.6049, 6058-59.
[138] ROA.6072, 6083-84, 6214-16.
[139] ROA.2429-30.
[140] *See City of Dallas v. Patrick*, 347 S.W.3d 452, 458 (Tex. App.—Dallas 2011, no pet.)) ("It is well established that a party cannot succeed on a gross negligence claim in the absence of a viable negligence claim"); *Meener v. Lynd Co.*, No. 05-17-00518-CV, 2018 WL 718553, at *4 (Tex. App.—Dallas Feb. 6, 2018, pet. denied) (quoting *First Assembly of God, Inc. v. Tex. Utilities Elec. Co.*, 52 S.W.3d 482, 494 (Tex. App.—Dallas 2001, no pet.)) ("one's conduct cannot be grossly negligent without being negligent") (internal quotation marks omitted).

## II.    Summary Judgment was Appropriate on Roe's Defamation Claims Against Dr. Patterson

Roe's defamation claims against Dr. Patterson were based on allegations that he: (1) personally defamed her; (2) was vicariously liable for the defamation of others; and (3) ratified defamatory statements of third-parties.[141] Because none of these allegations are factually and/or legally supported, the district court correctly granted summary judgment on Roe's defamation claims.

### A.    Dr. Patterson did not personally defame Roe

Roe asserts two bases for claiming that Dr. Patterson personally defamed her: (1) statements made to Professor Ennis during SWBTS' investigation into Roe's allegations; and (2) statements that occurred in the May 22, 2018 Board meeting. Neither basis supports a defamation claim against Dr. Patterson, and the district court correctly granted summary judgment on Roe's personal defamation claims against Dr. Patterson.

### 1.    Statements to Professor Ennis were not defamatory

In assessing whether Dr. Patterson personally defamed Roe, the district court correctly pointed out that "[t]o recover on [a defamation claim], the plaintiff must identify the alleged defamatory statement and the speaker."[142] In response to Dr.

---

[141] Dr. Patterson contends that the second and third categories of defamation were waived by Roe not including these categories in her statement of issues. Still, Dr. Patterson addresses the factual and legal deficiencies of these allegations, in case the Court does address their merits.
[142] ROA.2500 (quoting *Ameen v. Merck & Co., Inc.*, 226 Fed. Appx. 363, 370 (5th Cir. 2007)).

Patterson's motion for summary judgment, Roe alleged the following three statements to Professor Ennis were defamatory:

- Patterson told her that "[John Doe] showed him pictures that were compromised pictures of [Jane.]"

- Patterson implied that the relationship was consensual and that Jane had voluntarily sent Doe the photographs.

- Patterson did not tell her that Jane had reported to him that Doe had taken photographs during one of the assaults.[143]

The first allegation is a mischaracterization of the testimony, as Professor Ennis only testified that Dr. Patterson told her Doe *claimed* to have pictures of Roe, not that Dr. Patterson himself had actually seen them.[144] Because this allegation is not supported by Roe's own evidence, it is not supportive of Roe's defamation claims.

The second and third allegations do not identify defamatory oral statements made by Dr. Patterson.[145] Instead, they merely indicate Professor Ennis' subjective interpretations rather than any actual statements by Dr. Patterson. Further, Professor Ennis' interpretations contain only true statements[146] without speculation or

---

[143] ROA.8958.
[144] ROA.9650-51.
[145] *See Ameen*, 226 Fed. Appx. at 370. *See also Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (citing *Diaz v. Rankin,* 777 S.W.2d 496, 498 (Tex. App.—Corpus Christi 1989, no writ)) ("Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse.").
[146] ROA.6206-08.

accusations by Dr. Patterson that Roe's allegations were untrue.[147] Therefore, the statements are not defamatory.[148]

On appeal, Roe cites two new alleged defamatory statements for the first time: (1) "[Patterson] did not say he had seen them. He said that [John Doe] said he had pictures"; and (2) "[Patterson] told me that [John Doe] had pictures, that [Doe] had pictures. He did not say where or how he had gotten the pictures."[149] These alleged statements were not raised in the district court and have thereby been waived.[150]

If this Court elects, in the interests of justice,[151] to evaluate the additional statements, they still provide no support for Roe's defamation claims. Again, the second statement, although a direct quote, mischaracterizes Professor Ennis' testimony, which was that Dr. Patterson merely said that Doe alleged to have pictures.[152] The first statement is factually true – Doe did claim to have pictures and showed them to Dean Nichols[153] – and is protected by the investigative privilege and

---

[147] ROA.9650-52.

[148] *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d at 646 (True statements that plaintiff left a store without paying for a wreath, without speculation or accusation that plaintiff intended to steal, were not defamatory.).

[149] Brief for Plaintiff-Appellant, p. 47 (Doc. 41-1).

[150] *Superior Derrick Services, L.L.C. v. LONESTAR 203*, 547 Fed. Appx. at 438.

[151] Roe has not argued that these are exceptional circumstances that warrant such relief and has waived this argument. *See Alexandria v. Collier*, No. 21-50022, 2022 WL 3971294, at *1; *Kinash v. Callahan*, 129 F.3d 736, 739 (5th Cir. 1997).

[152] ROA.9650-51.

[153] ROA.6206-08.

without further speculation or accusation.[154] Therefore, neither statement is defamatory.[155]

### 2.    Dr. Patterson did not make the May Board meeting statements relied on by Roe

Roe relies on statements made during a May 22, 2018 Board of Trustees meeting and notes prepared in advance of that meeting as support that Dr. Patterson personally defamed her. There is no evidence that the notes were published by Dr. Patterson to a third-party and the testimony clearly establishes that Mr. Sharpe, not Dr. Patterson, spoke to Roe's allegations during the Board Meeting. As such, any claim that Dr. Patterson personally defamed Roe in relation to the May Board meeting is unsupported.[156] Whether legal liability exists for the statements purportedly made by Mr. Sharpe are addressed below.

### B.    Dr. Patterson is not vicariously liable for alleged defamatory statements of others

Roe claims that Dr. Patterson is vicariously liable for defamation based on the Publications, which Dr. Patterson was neither involved in nor aware of until after their publication occurred, and Mr. Sharpe's statements in the May Board meeting. Discussed in more detail below, Dr. Patterson was entitled to summary judgment on

---

[154] ROA.9650-52.

[155] *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d at 646.

[156] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (Publication is an essential element of defamation and requires the statement to be communicated to a third person).

all of Roe's vicarious liability claims because: (1) the doctrine of like immunity applies the limitations defense of Dr. Patterson's alleged agents to Dr. Patterson, as the purported principal; and (2) there is insufficient evidence of agency relationships and/or tortious conduct within the scope of an agency relationship. In addition, when viewing the contents of statements in the May Board meeting and contained within The Untold Truth and the Release of Facts, liability cannot be attached to these underlying sources.

### 1.   Time-barred claims against Dr. Patterson's alleged agents, who were never sued, cannot relate back in time, and the agents' limitations defense applies equally to Dr. Patterson

Like immunity establishes that a person who may be liable based on the conduct of another is entitled to assert the same defenses to liability as the individual who allegedly committed the tortious conduct.[157] Therefore, if an employee/agent has a complete defense to liability, the employer/principal is entitled to the benefit of the same defense.[158]

---

[157] *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004); *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 654 (Tex. 1995); *Miller v. Diaz*, No. 05-21-00658-CV, 2022 WL 109363, at *6 (Tex. App.—Dallas Jan. 12, 2022, no pet.); *William Marsh Rice Univ. v. Thomas*, No. 01-14-00908-CV, 2015 WL 3522915, at *7 (Tex. App.—Houston [1st Dist.] June 4, 2015, no pet.); *McMurrey Corp. v. Yawn*, 143 S.W.2d 664, 666 (Tex. Civ. App.—Texarkana 1940, writ ref'd) (applying like immunity to principal/agent relationship); *Cameron Compress Co. v. Kubecka*, 283 S.W. 285, 287 (Tex. Civ. App.—Austin 1926, writ ref'd).

[158] *Lab. Corp. Of Am. v. Compton*, 126 S.W.3d 196, 199–200 (Tex. App.—San Antonio 2003, pet. denied) (superseded by statute on other grounds); *Clements v. Conard*, 21 S.W.3d 514, 523 (Tex. App.—Amarillo 2000, pet. denied).

A defendant is entitled to summary judgment based on a limitations defense when: (1) the defendant conclusively establishes that a lawsuit was not brought prior to limitations having run; and (2) the plaintiff has not raised "a genuine issue of material fact on any equitable defense that its suit should not be barred even though the limitations period has run."[159] In this case, Roe sought to hold Dr. Patterson liable for the statements of others, all which occurred in 2018 or earlier.[160] Roe knew of the individuals who published the statements at the time her lawsuit was filed but never sued them.[161] Therefore, the discovery rule does not extend the accrual date for Roe's libel[162] or slander[163] claims, and her causes of action accrued, at the latest, on the date her lawsuit was filed. Because no tolling doctrine was raised by Roe or applies to her causes of action,[164] her failure to file claims against the alleged agents within one year of her Original Complaint means that these claims were time-barred,

---

[159] *Draughon v. Johnson*, 631 S.W.3d 81, 88–92 (Tex. 2021), *reh'g denied* (Sept. 24, 2021).

[160] ROA.1471-1502.

[161] *See* ROA.1471-1502, 3105-36.

[162] *Langston v. Eagle Pub. Co.*, 719 S.W.2d 612, 615 (Tex. App.—Waco 1986, writ ref'd n.r.e.) (discovery rule does not extend accrual date beyond the date plaintiff becomes aware of or "should have learned of the injury or wrong giving rise to action"); *Moore & Associates v. Metro. Life Ins. Co.*, 604 S.W.2d 487, 491 (Tex. Civ. App.—Dallas 1980, no writ) (cause of action accrues on date of communication or its discovery).

[163] *Martinez v. Hardy*, 864 S.W.2d 767, 774 (Tex. App.—Houston [14th Dist.] 1993, no writ) (citing *Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d 410, 412 (Tex. App.—Corpus Christi 1988, no writ)) ("A cause of action for slander accrues when the words are spoken and the injury occurs.").

[164] *See* ROA.8947-69.

and the alleged agents were entitled to a statute of limitations defense to any defamation claims.[165]

Because defamation claims against Dr. Patterson's purported agents were barred by limitations, Roe's defamation claims against Dr. Patterson based on vicarious liability were similarly barred due to like immunity.[166]

The district court denied Dr. Patterson's like immunity defense based on Roe's defamation claims relating back to her original pleading under Federal Rule of Civil Procedure 15(c)(1)(B). However, the district court's evaluation of whether the claims against Dr. Patterson relate back to Roe's original filing is not relevant. The controlling question is whether Roe's claims against the purported agents related back in time, since, if they do not, claims against them are barred by limitations, and like immunity applies to the claims against Dr. Patterson. Importantly, Rule 15(c)(1)(B) does not apply to this analysis.[167] Whether claims against a new party can relate back is judged under Rule 15(c)(1)(C).[168]

Rule 15(c)(1)(C) applies to the misnaming of a proper defendant.[169] The U.S. Supreme Court affirmed that seeking to *add* an additional party after limitations – as opposed to *replacing* a misnamed defendant with a correct defendant who has

---

[165] Tex. Civ. Prac. & Rem. Code Ann. § 16.002 (The statute of limitations for a defamation claim is one year after the cause of action accrues.).
[166] *Lab. Corp. Of Am. v. Compton*, 126 S.W.3d at 200; *Clements v. Conard*, 21 S.W.3d at 523.
[167] *See Winzer v. Kaufman Cnty.*, 916 F.3d 464, 470–71 (5th Cir. 2019).
[168] *See id.*
[169] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550–51 (2010).

constructive notice of the claim – is not a "mistake concerning the proper party's identity" for which 15(c)(1)(C) applies.[170] This court has similarly held that a party's failure to identify defendants prior to limitations is not a mistake meriting application of the relation back doctrine.[171] Although not precedential, relying on this court's decision in *Winzer*, the court in *Jones v. Tex. A&M Univ.* held that claims against two individual defendants did not relate back and should be dismissed when the plaintiff, after timely asserting Section 1983 claims against Texas A&M University, added 1983 claims against individuals after limitations.[172]

     In sum, claims against the alleged agents do not relate back under Rule 15(c). Because those claims were time barred, and since Dr. Patterson was entitled to the same defenses as his alleged agents, Roe's vicarious liability claims against Dr. Patterson are barred by like immunity.

---

[170] *Id.* (quoting Fed. R. Civ. P. 15) (internal quotation marks omitted) ("When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."); *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n. 1 (2000) (Relation back doctrine, at time Rule 15(c)(3), not applicable to claims against president and sole shareholder of corporation when, after award against corporation, plaintiff sought to amend its complaint to add claims against president and sole shareholder.).

[171] *Winzer v. Kaufman Cnty.*, 916 F.3d at 471.

[172] No. CV H-18-1434, 2020 WL 4013143, at *4 (S.D. Tex. Feb. 26, 2020), report and recommendation adopted, No. CV H-18-1434, 2020 WL 1698907 (S.D. Tex. Apr. 8, 2020). *See also Sanders-Burns v. City Of Plano*, 594 F.3d 366, 379 (5th Cir. 2010) (quoting 3 EDWARD SHERMAN & MARY P. SQUIERS, MOORE'S FEDERAL PRACTICE-CIVIL 15.19[3][d] (2009)) (internal quotation marks omitted).

### 2. The Publications did not occur within the scope of an agency relationship on behalf of Dr. Patterson

Roe complains of three written publications: The Untold Truth; the Release of Facts; and the Loveless Letter. Dr. Patterson did not "take part in drafting the Publications."[173] As such, Roe relies on others publishing these statements as Dr. Patterson's agents, but she fails to establish any sufficient agency relationships and/or conduct within such a relationship pertaining to the Publications that would support her vicarious liability claims.

An agency relationship requires the existence of "a manifestation of consent by the purported agent to act on the principal's behalf and subject to the principal's control, together with a manifestation of consent by the purported principal authorizing his agent to act."[174] Such consent requires "some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)."[175] For apparent authority to exist, the "principal's full knowledge of all material facts is essential."[176] Only the principal's conduct is relevant when determining apparent authority.[177] The "good faith belief" of agency

---

[173] ROA.6283.

[174] *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) (citing *Grissom v. Watson*, 704 S.W.2d 325, 326 (Tex. 1986)).

[175] *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (citing *Hester Int'l Corp. v. Fed. Republic of Nig.*, 879 F.2d 170, 181 (5th Cir. 1989)).

[176] *Id*. (citing *Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex. 1975)).

[177] *Id*. at 182–83 (citing *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996)).

by a third party is not sufficient,[178] and agency relationships are not presumed.[179] The party asserting such a relationship has the burden of proof.[180]

In addition to the existence of an agency relationship, for a principal to be liable for the conduct of its agent, there must be a showing that the conduct occurred within the bounds of the relationship. "[B]ased on an agency relationship," a principal may be liable for statements of an agent when the statement is made "in the general authority of the agency and for the accomplishment of the objective of the agency."[181] Apparent authority is more narrowly limited "to the scope of responsibility that is apparently authorized."[182]

### a) The Untold Truth and Loveless Letter were not authorized by Dr. Patterson

This Court previously affirmed summary judgment rejecting a vicarious liability claim when a law firm was not aware of an attorney's independent escrow work, even though the attorney represented an agency relationship to others.[183] Here, Dr. Patterson similarly did not authorize the acts of his purported agents or have knowledge of The Untold Truth or Loveless Letter prior to their publications.[184]

---

[178] *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.—Dallas 2014, no pet.).

[179] *Hansen*, 525 S.W.3d at 697 (citing *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007)).

[180] *Id.* (citing *Griego*, 221 S.W.3d at 597).

[181] *In re Lipsky*, 411 S.W.3d 530, 547 (Tex. App.—Fort Worth 2013, no pet.).

[182] *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004).

[183] *Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595, 615 (5th Cir. 2021).

[184] ROA.6283, 6389-90, 6401.

Without the establishment of express or implied authority, summary judgment on defamation claims concerning these publications was proper.

As to The Untold Truth, Roe relies on the following to establish publication within an agency relationship: Dr. Patterson's request, while he was still employed by SWBTS, for Dr. Finch to obtain records concerning a former student, unrelated to Roe; Mr. Colter assisting Dr. Patterson with his separation from SWBTS; and Dr. Finch's employment with Sandy Creek Foundation months after the publication. Any agency that did exist between Dr. Patterson and Dr. Finch/the Colters was limited in scope and did not include authority to make public statements on his behalf.[185] Dr. Patterson did not expressly authorize such statements or impliedly represent such authority to a third party. Nor could he have. He was not aware of The Untold Truth until after it was published.[186]

Similarly, Roe has failed to show that the Loveless Letter was somehow published within an agency relationship for Dr. Patterson. Neither Mr. Loveless nor Ms. Pearson communicated with Dr. Patterson about the Letter prior to its publication or had authority to publish it for Dr. Patterson.[187] Roe instead attempts to connect the publication to Dr. Patterson through Mr. Colter's communications with others. Again, Roe misses the predicate of establishing any actual or apparent

---

[185] ROA.6283.
[186] ROA.6389-90, 6401.
[187] ROA.6283-84, 6343-45, 6369-71.

authority Mr. Colter retained on behalf of Dr. Patterson while the publication was being drafted and published. The only evidence is that he retained no authority to make public statements on Dr. Patterson's behalf.[188] Further, and as pointed out by the district court in its opinion, Roe failed to establish any connection between Mr. Colter and the statements in the Loveless Letter that were alleged to be defamatory.[189]

### b) The Release of Facts was not published on behalf of Dr. Patterson or otherwise within an agency relationship

With respect to agency, the district court simply addressed whether there was evidence Mr. Sharpe, as Dr. Patterson's attorney, was also his attorney. However, this is not the end of the inquiry. As in other agency relationships, in an attorney-client relationship, "[t]he mere existence of an agency relationship is not enough to visit tort liability on a principal."[190] Texas courts have repeatedly declined to hold clients liable for their attorneys' acts in the course of judicial proceedings when the client is not "implicated in some way other than merely being represented by the

---

[188] ROA.6283.
[189] ROA.2516.
[190] *Bradt v. West*, 892 S.W.2d 56, 76 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (citing *Graham v. McCord,* 384 S.W.2d 897, 898 (Tex. Civ. App.—San Antonio 1964, no writ)).

attorney."[191] Similarly, clients are not bound to the acts of their attorney when done without actual or implied authority.[192]

In this case, whether a client may be liable for defamation by their attorney may be a novel question under Texas law. However, a client's liability for intentional torts of their attorney is not.[193] "An attorney-client relationship is an agency relationship."[194] As such, ordinary agency principles apply, and the client, as the principal, will only be liable for the acts of their attorney/agent "within the scope of the agent's employment."[195]

Principals are not liable for the acts of their agents when the individual "deviates from the performance of his duties for his own purposes."[196] Actions merely "tangential" to one's duties are insufficient to create liability on the employer/principal.[197] Further, intentional torts "are generally the expression of

---

[191] *Enercor, Inc. v. Pennzoil Gas Mktg. Co.*, No. 01-98-01026-CV, 2001 WL 754773, at *11 (Tex. App.—Houston [1st Dist.] July 5, 2001, pet. denied) (not designated for publication) (citing *Bradt v. West*, 892 S.W.2d 56, 76 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).

[192] *See Strad Energy Services USA, Ltd. v. Bernal*, No. 04-16-00116-CV, 2016 WL 6242839, at *2–3 (Tex. App.—San Antonio Oct. 26, 2016, pet. denied) (settlement agreement unenforceable when attorney did not have authority to settle claims on client's behalf); *Randell v. Galbreath*, No. 11-15-00056-CV, 2017 WL 2698113, at *3–4 (Tex. App.—Eastland June 22, 2017, no pet.) (applying principles of actual and apparent authority to acts of attorney).

[193] *See Sw. Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 758-59 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied). *See also McCowan v. Software Spectrum, Inc.*, No. 08-00-00077-CV, 2002 WL 505138, at *12 (Tex. App.—El Paso Apr. 4, 2002, no pet.) (not designated for publication).

[194] *Id.* (citing *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986)).

[195] *Id.* (citing *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972)).

[196] *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (citing *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 158 (Tex. App.—El Paso 1996, writ denied)).

[197] *See Anderson v. United States*, 364 Fed. Appx. 920, 924 (5th Cir. 2010).

personal animosity," and outside the scope of an agency relationship.[198] The plaintiff bears the burden to prove an agent acted for reasons other than an expression of personal animosity.[199]

In general, Mr. Sharpe was "not authorized to speak on [Dr. Patterson's] behalf or make public statements without [his] approval."[200] With respect to the Release of Facts, at no time in the month after Dr. Patterson's separation of employment from SWBTS was Mr. Sharpe authorized to make any statements concerning Roe or Dr. Patterson's separation of employment from SWBTS.[201] He did so in his personal capacity without first speaking to Dr. Patterson or obtaining his approval.[202] Knowing the publication would be against Dr. Patterson's wishes, Mr. Sharpe published the Release of Facts solely on his own:

> In fact, it says that's the reason I released it, is to challenge what was in his June 1 – the false statements that I saw. And I knew Dr. Patterson wouldn't, so I on my own decided, I'm not going to let this go.[203]

In *Mars, Inc.*, an employer was not responsible for publication by its employee of an allegedly defamatory email, since the employee was acting "independently"

---

[198] *See Harris v. Mastec N. Am., Inc.*, No. 05-19-00955-CV, 2020 WL 6305028, at *3 (Tex. App.—Dallas Oct. 28, 2020, no pet.).
[199] *Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 800 (Tex. App.—Amarillo 2004, pet. denied) (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617-18 (Tex. 1999)).
[200] ROA.6284.
[201] ROA.6284.
[202] ROA.6266-68, 6270, 6273-74.
[203] ROA.6275.

and "not *on behalf of*" the company.[204] Similarly, in *Blackwell*, a real estate agent's defamation was too tangential to his duties to impute defamatory statements to the alleged principal, even though the defamatory conduct induced persons to break real estate contracts with the plaintiff and purchase the principal's property instead.[205] The holdings in *Mars, Inc*. and *Blackwell* are equally applicable here, and the Release of Facts was neither a publication on behalf of Dr. Patterson nor done in the course of an agency relationship.

### 3.   Roe's vicarious liability defamation claims based on the Board meeting were waived and concern non-actionable allegations

In response to Dr. Patterson's motion for summary judgment, Roe did not claim that Dr. Patterson was vicariously liable for the words of others during the May 22 Board meeting. [206] Instead, she alleged that he *personally* defamed her via three specific statements.[207] Roe did not assert that Dr. Patterson was vicariously liable for words spoken by Mr. Sharpe until her Sur-Reply.[208] As such, this argument was waived, should not have been addressed by the district court, and is not a basis to attack summary judgment.[209]

---

[204] *Mars, Inc. v. Gonzalez*, 71 S.W.3d 434, 441 (Tex. App.—Waco 2002, pet. denied).
[205] *Blackwell v. Ship Channel Dev. Co.*, 264 S.W. 223, 228–29 (Tex. Civ. App.—Beaumont 1924, writ dism'd w.o.j.).
[206] ROA.8947-69.
[207] ROA.8958.
[208] *See* ROA.8947-69, 11375-82.
[209] *U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, 761 F.3d 409, 426 n. 13 (5th Cir. 2014), as revised (Sept. 2, 2014) (arguments raised for first time in sur-reply were waived); *Doe v. Tonti*

Even assuming Roe's vicarious liability arguments were properly at issue, the district court was correct to grant summary judgment on the grounds expressed in its Memorandum Opinion and Order.[210] First, Roe did not allege or establish through any proof that Dr. Patterson's notes for the May 22 meeting were published to a third-party. Therefore, they are not a basis for a defamation claim.[211] Second, the question posed in the notes, by an unknown person who is uncertain of his/her recollection of what was said and who it was regarding, is not evidence that Dr. Patterson made a specific defamatory statement in the past.[212] Third, Dr. Ueckert's recollection of statements made by Mr. Sharpe in the meeting was similarly not specific enough to support a defamation claim.[213]

In addition, even if Mr. Sharpe's statements could be considered defamatory, the statements were not attributable to Dr. Patterson,[214] any statement of fact regarding pictures was factually true,[215] and the statements were protected by the investigative privilege.[216]

---

*Mgmt. Co., L.L.C.*, No. CV 20-2466, 2021 WL 5508874, at *7 n. 36, *8 (E.D. La. Mar. 1, 2021) (same).

[210] *See* ROA.2502-04.

[211] *Rincones*, 520 S.W.3d at 579.

[212] *See Ameen*, 226 Fed. Appx. at 370 (defamatory statements must be identified and vague allegations are insufficient.)

[213] *Id.*

[214] *See* discussion *supra* Section II.B.2.b.

[215] ROA.6206-08.

[216] *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d at 646.

### 4.    Roe's claim that The Untold Truth was extrinsically defamatory was waived and lacks merit

The district court found that "nothing in [The Untold Truth] is defamatory" and that, even applying extrinsic defamation arguments, the gist of the article was not defamatory.[217] On appeal, Roe does not allege that the publication includes textual defamation or defamation by implication or inuendo.[218] Instead, she claims that the district court's ruling was incorrect and her defamation claims are supported by the publication's gist.[219] Roe's extrinsic defamation argument was never asserted in the district court[220] and cannot support her appeal.[221]

Taking Roe's argument into consideration does not alter the result. The gist of The Untold Truth is not defamatory. A publication's "gist" is its "main theme, central idea, thesis, or essence."[222] Typically, a publication only has a single gist, which is an "implication that no reasonable reader would fail to notice."[223] To determine an article's gist, courts evaluate the publication based on an "objectively reasonable reading" and must "construe the publication as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive

[217] ROA.2506-08.
[218] Brief for Plaintiff-Appellant, p. 42-43 (Doc. 41-1).
[219] Brief for Plaintiff-Appellant, p. 42-43 (Doc. 41-1) (Roe does not allege defamation by partial implication.).
[220] ROA.1471-1502.
[221] *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018) ("[P]laintiffs relying on extrinsic defamation must assert as much in their petitions to present the theory at trial.").
[222] *Id*. at 629.
[223] *Id*. at 629-31.

it."[224] An objectively reasonable reader does not "focus on individual statements to the exclusion of the entire publication."[225] Instead, all of the reasonable implications are internalized and considered carefully but not through exegesis.[226] The gist of an article is usually determined as a matter of law.[227]

The Untold Truth is a five-page article with attachments that addresses the propriety of Dr. Patterson's conduct as a Southern Baptist leader. The gist of the article is that, when the full truth of the allegations against Dr. Patterson is considered, the public disdain against Dr. Patterson is not warranted. The gist of the article does not pertain to Roe and is not defamatory towards her.

The article mentions Roe's allegations only as a part of one of five specific accusations against Dr. Patterson that are addressed.[228] And, the accusation itself is not defamatory of Roe and only considers whether Dr. Patterson properly handled her report through revelation of facts concerning that report. There is no implication that Roe's allegations were dishonest, as Roe alleges. Further, Roe's attempted connection to the first accusation, as collectively implying that both individuals' allegations were false, is also disingenuous. Accusation # 1 merely addresses Dr. Patterson's lack of knowledge and participation in a student's alleged allegation of

---

[224] *Id.* at 631, 636 (quoting *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (internal quotation marks omitted).
[225] *Id.* at 631 (internal quotation marks omitted).
[226] *Id.*
[227] *Id.* at 636.
[228] *See* ROA.9344-59.

assault.[229] Assertions that Dr. Patterson's involvement in both situations was proper is not an implication that the reports themselves were false.

### 5. The absence of pleadings and evidence of defamation per se and special damages justifies summary judgment pertaining to the Release of Facts

The district court correctly found that the alleged defamatory statements in the Release of Facts are defamation per quod and, because there was no evidence of damages, summary judgment on defamation claims pertaining to this publication was proper. On appeal, Roe briefly alleges that statements by SWBTS' *employees* were defamatory per se but makes no such argument regarding the statements in the Release of Facts,[230] which was published by Dr. Patterson's attorney, Shelby Sharpe.[231] Because this issue has not been adequately briefed, it has been waived,[232] and proof of damages is required.[233]

---

[229] *See* ROA.9345.

[230] *See* Brief for Plaintiff-Appellant (Doc. 41-1).

[231] ROA.6268, 6270, 6273-74.

[232] *See James v. Woods*, 899 F.3d at 411. Even if not waived, Roe cannot support her defamation per se arguments, since her Complaint did not identify a statement in the Release of Facts alleged to be defamation per se, *see* ROA.1471-1502, and the publication itself contains no defamatory per se statements. *See Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (*quoting Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.] 2013), judgment withdrawn, No. 14-12-00015-CV, 2014 WL 6679562 (Tex. App.—Houston [14th Dist.] Nov. 25, 2014, no pet.) ("[A] statement is defamatory per se only if it falls within one of the following categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct.") (internal quotation marks omitted).

[233] *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)).

Proof of mental anguish requires "direct evidence of the nature, duration, or severity" of the anguish or some evidence of "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger."[234] Further, there must be "a causal connection between the defamatory statements" and anguish[235] and support that some amount of damages should be awarded.[236]

In support of damages, Roe cites to her worry, anxiety, and embarrassment related to all of the Publications. However, she provides no evidence that her subjective feelings and conclusory beliefs satisfied the elevated standard required for mental anguish. Nor does she causally connect these feelings to the Release of Facts, especially in light of the assaults and Loveless Letter having resonated the most significant complaints.

## C.    Dr. Patterson did not ratify a defamatory statement

The district court held that an individual cannot ratify the alleged defamatory statements of a non-agent.[237] Therefore, because there was no evidence that Mr. Colter or the authors of the Loveless Letter were agents of Dr. Patterson when the

---

[234] *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quoting *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ)) (internal quotation marks omitted).
[235] *El-Khoury v. Kheir*, 241 S.W.3d 82, 88–89 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).
[236] *Gregory v. Chohan*, 670 S.W.3d 546, 563–64 (Tex. 2023) (citing *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)).
[237] ROA.2519.

letter was prepared, Dr. Patterson could not ratify the letter for purposes of defamation liability.[238] Such a result is dispositive of Roe's defamation claims.

Assuming that defamation liability for ratification could factually and legally exist in these circumstances, Texas case law further establishes that ratification is not a viable cause of action for Roe. In general, "[r]atification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate."[239] When a defamation claim against an individual is based on an unauthorized act of an agent, the Dallas Court of Civil Appeals has further required an "election" by the principal to "seek the benefit of [the agent's] unauthorized act" in order for principal liability to exist.[240]

In support of her ratification claims on appeal, Roe relies on the following conduct by Dr. Patterson: (1) his silence and failure to repudiate the Publications; (2) subsequent expressions of gratitude; (3) an email to Mr. Loveless; (4) statements in the Mefferd podcast; and (5) a 2019 letter to the editor.[241] However, none of these

---

[238] ROA.2519.

[239] *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021), *reh'g denied* (Oct. 15, 2021) (citing *Wise v. Pena*, 552 S.W.2d 196, 199 (Tex. App.—Corpus Christi–Edinburg 1977, writ dism'd)).

[240] *Evans v. McKay*, 212 S.W. 680, 688 (Tex. Civ. App.—Dallas 1919, writ dism'd w.o.j.).

[241] Brief for Plaintiff-Appellant, p. 62-65 (Doc. 41-1). Roe does not explicitly rely on the Mefferd podcast or letter to the editor as defamation committed personally by Dr. Patterson. However, to the extent these issues are intended to be raised, they were not raised in the district court and have been waived. *Superior Derrick Services, L.L.C. v. LONESTAR 203*, 547 Fed. Appx. at 438.

acts or omissions support ratification with respect to the alleged defamatory statements.

First and foremost, Dr. Patterson's conduct at no time evinces an election by him to adopt or confirm any alleged defamatory statement. Silence and private communications, on their own, are not sufficient to establish ratification.[242] Public figures cannot be held to the impossible task of identifying and correcting all public statements related to them that may contain defamatory statements. Also, Dr. Patterson's private email to the authors of the Loveless Letter that the letter was "sensational" does not amount to his own adoption of the letter in its entirety. Nor does it give any further support to the publication without the email being communicated to third parties.

As to the Mefferd podcast, Roe entirely misrepresents the context of these communications. First, the podcast only references donor support and does not specifically identify the Loveless letter.[243] Second, Dr. Patterson's quoted statements are in response to a question about due process concerns with the Board of Trustee's Executive Committee's decision to fire him.[244] There is no wholesale adoption of the Loveless letter or any intent to confirm statements in the letter concerning Roe.

---

[242] *See Sw. Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 764 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied) (citing *Banctexas Allen Parkway v. Allied Am. Bank*, 694 S.W.2d 179, 181 (Tex. App.—Houston [14th Dist.] 1985, no writ)); *Evans v. McKay*, 212 S.W. at 688.
[243] ROA.9014-51.
[244] ROA.9031.

Similarly, the 2019 letter to the editor cited by Roe similarly fails to identify any specific publication or alleged defamatory statement concerning Roe.[245] As such, neither the podcast nor letter to the editor support ratification.

Roe's ratification claims further fail because Dr. Patterson did not possess knowledge of all material facts concerning the alleged defamatory statements, which is required for ratification to occur. The alleged defamatory statements concern intimate details of Roe's relationship with Doe and private conversations that Dr. Patterson was not privy to.[246] Without the gift of omniscience, Dr. Patterson could not have known the truth or falsity of statements contained in the Publications. Nor could he have known if the statements were based on information from sources that he was not aware of.

In addition to not having the capacity to verify the accuracy of the statements, Dr. Patterson also could not repudiate them. Such a disclosure pertaining to facts known by Dr. Patterson would violate confidentiality requirements for student records imposed by SWBTS[247] and could be a potential violation of Texas law.[248]

Finally, Roe does not cite any instance of Dr. Patterson electing to seek a benefit based on an alleged defamatory statement concerning her. Without such

---

[245] ROA.9615-16.
[246] ROA.1499.
[247] ROA.6282.
[248] *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

evidence, Dr. Patterson could not have ratified the alleged defamation that occurred by others.[249]

## CONCLUSION

For the foregoing reasons, Appellee Leighton Paige Patterson respectfully requests that this Court affirm the district court's summary judgments and April 5, 2023 final judgment, tax costs against Roe in favor of Dr. Patterson, and grant Dr. Patterson all other general relief.

Respectfully submitted,

GRAU LAW GROUP, PLLC

 /s/ Travis J. Jones
TRAVIS J. JONES
Texas Bar No.: 24101979
tjones@graulawgroup.com

JAMES W. GRAU
Texas Bar No.: 08306350
jgrau@graulawgroup.com

500 N. Akard St., Suite 1925
Dallas, Texas 75201
(214) 521-4145 Telephone
(214) 521-4320 Facsimile

ATTORNEYS FOR APPELLEE
LEIGHTON PAIGE PATTERSON

---

[249] *Evans v. McKay*, 212 S.W. at 688.

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Appellate Procedure, I certify that a true and correct copy of the foregoing *Appellee Brief of Leighton Paige Patterson* was served on counsel for all parties of record via email and electronic service on October 27, 2023.

 /s/ Travis J. Jones
Travis J. Jones

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this documents contains 13,000 words.

 /s/ Travis J. Jones
Travis J. Jones